### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **COLT DEFENSE LLC,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 04-240-P-S** |
| | ) | **<u>REDACTED</u> <u>VERSION</u>** |
| **BUSHMASTER FIREARMS, INC.,** | ) | |
| | ) | |
| **Defendant** | ) | |

### MEMORANDUM DECISION ON DEFENDANT'S
### MOTION TO EXCLUDE AND RECOMMENDED DECISION
### ON DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT[1]

Defendant Bushmaster Firearms, Inc. ("Bushmaster") moves for summary judgment with respect to all six counts of fellow firearms manufacturer Colt Defense LLC's ("Colt's") complaint against it and with respect to its counterclaim against Colt in this action alleging a variety of trademark- and trade-dress-related violations.  *See* Defendant Bushmaster Firearms, Inc.'s Motion for Summary Judgment, etc. ("Defendant's S/J Motion") (Docket No. 38) at 1; *see also* Complaint, Attachment Nos. 1-2 to Civil Docket, *Colt Defense LLC v. Heckler & Koch Defense Inc.*, Civil Action No. 2:04cv258 (E.D. Va.) ("Virginia Docket") (Docket No. 1), ¶¶ 51-65, 81-86, 93-97, 103-11, 121-29, 139-46; Answer and Counterclaim of Bushmaster Firearms, Inc. ("Answer"), Attachment No. 7 to Virginia Docket, Counterclaim ¶¶ 7-23.[2]  In a motion *in limine* incorporated by reference in

---

[1] This version of my opinion has been redacted to preserve the confidentiality of certain information submitted on that basis.  A full, unredacted version is being filed under seal simultaneously herewith.

[2] Colt filed this case against Bushmaster and three other defendants (the latter three, "Heckler & Koch") in the United States District Court for the Eastern District of Virginia.  *See* Virginia Docket at 2-3; Complaint at 1.  That court granted Bushmaster's motions to (i) sever Colt's claims against Bushmaster from its claims against Heckler & Koch and (ii) transfer Colt's claims against Bushmaster, as well as Bushmaster's counterclaims against Colt, to this court.  *See* Order, *Colt Defense LLC v. Heckler & Koch Defense Inc.*, Civil Action No. 2:04cv258 (E.D. Va. Oct. 22, 2004), Attachment No. 27 to Virginia Docket, at 45.

its summary-judgment papers, Bushmaster also seeks to exclude select testimony of Colt's proposed expert Michael F. LaPlante.  *See* Defendant Bushmaster Firearms, Inc.'s Motion To Exclude Certain Testimony of Plaintiff's Proposed Expert Michael F. LaPlante, etc. ("Motion To Exclude") (Docket No. 36) at 1; *see also, e.g.*, Defendant Bushmaster Firearms, Inc.'s Reply Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Defendant's Reply SMF") (Docket No. 67) ¶ 2.  For the reasons that follow, I grant in part and deny in part Bushmaster's motion to exclude and recommend that its motion for summary judgment be granted in part and denied in part.

## I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant.  By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'"  *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a

trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by

this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (citations and internal punctuation omitted).

## II. Factual Context

### A. Motion To Exclude

As a threshold matter I address Bushmaster's motion to exclude, in which it contends that three of LaPlante's opinions run afoul of Federal Rule of Evidence 702 inasmuch as (i) he is not qualified by "knowledge, skill, experience, training or education" to offer them, (ii) they are not based on sufficient facts or data to qualify as reliable, and (iii) they are not helpful to the trier of fact. *See* Motion To Exclude at 2-4; Fed. R. Evid. 702. For the reasons that follow, I agree with respect to the first two opinions but not the third:

1. **Opinion #1,** that the term M4 "for over ten years has been associated with Colt . . . and has been associated with Colt's quality reputation[,]" Motion To Exclude at 2; *see also* Plaintiff Colt Defense LLC's Opposition to Defendant's Motion To Exclude Certain Testimony of Plaintiff's Expert Michael LaPlante, etc. ("Exclude Opposition") (Docket No. 54) at 1.[3]

---

[3] In this and a great many instances in its summary-judgment papers, Colt affixes the registration symbol, ®, after the term M4. Bushmaster objects as a general proposition to what it views as Colt's misuse of the symbol even when not using the term in a trademark manner or when referring to its usage prior to 2003, when the mark was registered. *See, e.g.*, Defendant's Reply SMF ¶ 4. (*continued on next page*)

LaPlante holds engineering and business-management degrees and has nearly thirty years' experience as an engineer, engineering consultant and executive in the firearms industry; yet, as Bushmaster points out, "notably absent from his resume is any experience working in marketing or sales for Colt." Defendant Bushmaster Firearms, Inc.'s Reply in Support of Its Motion To Exclude Certain Testimony of Plaintiff's Proposed Expert Michael F. LaPlante ("Exclude Reply") (Docket No. 59) at 3; Expert Report of Michael F. LaPlante ("LaPlante Report"), Exh. 1 to Exclude Opposition, ¶¶ 2-8. Indeed, LaPlante describes his field of expertise as "fire arms design, engineering, and manufacturing," LaPlante Report ¶ 1.

Colt points out that LaPlante helped design its M4 firearm and has had extensive responsibility for assurance of its quality, including [**REDACTED**]. Exclude Opposition at 5-6; *see also* LaPlante Report ¶¶ 7-8.[4] Nonetheless, as Bushmaster argues, while this background might qualify LaPlante to testify as an expert on the mechanics and functioning of Colt's M4 carbine and its reliability and durability, it does not qualify him to testify as an expert with respect to the association in the minds of the relevant public between the terms M4 and Colt. *See* Exclude Reply at 3-4; *see also, e.g., CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 888 F. Supp. 192, 200 (D. Me. 1995), *aff'd*, 97 F.3d 1504 (1st Cir. 1996) (test of likelihood of confusion in trademark-infringement case "is not applied to assess confusion in the abstract; it is focused on the likelihood that commercially relevant persons or entities will be confused.").

What is more, as Bushmaster points out, *see* Exclude Reply at 4, during his deposition LaPlante acknowledged that [**REDACTED**], *see* Deposition of Michael LaPlante ("LaPlante Dep."), Exh. 2 to Exclude Opposition, at 46-48, 54-56.

---

To avoid confusion, for purposes of this decision I omit the registration symbol.

[4] My pinpoint citations to memoranda of law are to the sealed versions of those memoranda. Pinpoint citations to statements of material facts are the same for both the sealed and the redacted versions of those documents.

LaPlante accordingly is not qualified to testify as an expert regarding association between the mark M4 and Colt in the sense relevant to the instant litigation.

2.       **Opinion #2**:  That Colt's trademarks and trade dress are widely used, world renowned and famous.  *See* Motion To Exclude at 2; Exclude Opposition at 1.

With respect to LaPlante's qualifications to offer Opinion #2, Colt posits that LaPlante is personally knowledgeable about the fame and renown of Colt's marks, having spent his entire thirty-year working life in the firearms industry (including as an independent firearms consultant, owner of a retail firearms store and senior manufacturing engineer for other firearms manufacturers in addition to Colt).  *See* Exclude Opposition to 6; *see also* LaPlante Report ¶¶ 3-8.  Apart from this, Colt argues that LaPlante, as an expert, had a right to rely on his review of extensive secondary sources in formulating his opinion, [**REDACTED**].  *See* Exclude Opposition at 7; LaPlante Dep. at 6-7, 18, 47-48, 82, 103; *see also, e.g.*, Fed. R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."); *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data.").

As Bushmaster points out, *see* Exclude Reply at 5, Opinion #2 implicates Count XI of Colt's complaint, which asserts violation of the Federal Trademark Dilution Act ("FTDA"), *see* Complaint ¶¶ 139-46; *see also, e.g., I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 36 (1st Cir. 1998) ("Despite different purposes being served, claims for protection against trademark and trade dress infringement, on the one hand, and dilution, on the other, share three common elements before the analyses diverge.  Those elements are that marks (a) must be used in commerce, (b) must be non-

6

functional, and (c) must be distinctive.  While all such marks may be protected against infringement, under the FTDA only *famous* and distinctive marks are eligible for protection against dilution.  No requirement for fame is present in trademark and trade dress infringement.") (emphasis in original).

As Bushmaster further notes, *see* Exclude Reply at 5, Count XI pertains only to the M4 mark, *see* Complaint ¶¶ 139-46.  [**REDACTED**].  *See* LaPlante Dep. at  36, 43-44, 58; Errata sheet to LaPlante Dep., Exh. A to Exclude Reply.  Thus, these jobs do not serve as a predicate for personal knowledge of the fame of the mark M4.  Nor is it apparent, for reasons discussed in the context of Opinion #1, above, that LaPlante's engineering, management and quality-control experience affords personal knowledge of the famousness of the mark M4.  To the extent that LaPlante relies on his review of secondary sources, as Bushmaster posits, his preparations do not appear to have been extensive, *see* Exclude Reply at 2-3; LaPlante Dep. at 16, 18, 20-21, and do not suffice to fill the gap left by his lack of relevant personal knowledge, skill, experience, training or education, *see* Fed. R. Evid. 702 (expert's testimony must be "based upon sufficient facts or data").

Beyond this, LaPlante acknowledged at deposition that [**REDACTED**].  *See* LaPlante Dep. at 65.  Colt suggests that lack of trademark expertise is not necessarily fatal when a witness's opinion bears on at least some (if not all) of the eight factors legally relevant to famousness analysis.  *See* Exclude Opposition at 8-9.[5]  However,  neither the LaPlante Report nor those portions of LaPlante's deposition testimony cited by Colt provide much by way of concrete information about any of the eight factors relative to the M4 mark.  *See* LaPlante Report; LaPlante Dep. at 6-7, 18, 36, 39-40, 44-49, 58-

---

[5] As Colt points out, *see* Exclude Opposition at 8, those eight factors are: (i) "the degree of inherent or acquired distinctiveness of the mark[,]" (ii) "the duration and extent of use of the mark in connection with the goods or services with which the mark is used[,]" (iii) "the duration and extent of advertising and publicity of the mark[,]" (iv) "the geographical extent of the trading area in which the mark is used[,]" (v) "the channels of trade for the goods or services with which the mark is used[,]" (vi) "the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought[,]" (vii) "the nature and extent of use of the same or similar marks by third parties" and (viii) "whether the mark was registered[,]" 15 U.S.C. § 1125(c)(1).

60, 65, 82, 95, 103, 114.  In short, Colt has not demonstrated LaPlante's qualification to opine on the famousness of the M4 mark.

       3.      **Opinion #3**:  That "there is substantial value to the non-military commercial market in producing a weapon that 'looks and feels' like a genuine military weapon[.]"  Motion To Exclude at 2; Exclude Opposition at 1.

       As to the final opinion in question I reach the opposite conclusion.  Colt demonstrates that LaPlante had an adequate basis of knowledge, experience and data to buttress this opinion based on [**REDACTED**].  *See* LaPlante Dep. at 36, 59-60; *see also* Attachment No. 1 to Exh. 3 to Exclude Opposition (Bushmaster advertising referring to "mil. spec.," *i.e.*, "military specifications").  While LaPlante's [**REDACTED**].  LaPlante Dep. at 60.  Colt's objection in this instance goes to the weight, not the admissibility, of the challenged opinion.

       For the above reasons, Bushmaster's motion to exclude is granted with respect to Opinions ##1-2 and denied with respect to Opinion #3.

### B.  Factual Landscape

       With the foregoing resolved, the parties' statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to  Colt as nonmovant, reveal the following relevant to  this recommended decision:[6]

       Bushmaster is a manufacturer of firearms and firearms parts.  Defendant Bushmaster Firearms, Inc.'s Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Defendant's SMF") (Docket No. 39) ¶ 1; Plaintiff Colt Defense LLC's Statement of Material Facts

---

[6] As noted above, Local Rule 56 requires a party responding to a statement of material facts to admit, deny or qualify the underlying statement.  *See* L.R. 56(c)-(d).  As a general rule, the concept of "qualification" presupposes that the underlying statement is accurate but in some manner incomplete, perhaps even misleading, in the absence of additional information.  Except to the extent that a party, in (*continued on next page*)

in Opposition to Defendant Bushmaster Firearms, Inc.'s Motion for Summary Judgment ("Plaintiff's

Opposing SMF") (Docket No. 58) ¶ 1.[7]  Bushmaster, which has its headquarters in Windham, Maine,

has been in operation continuously since 1978.  *Id.*

Colt is a manufacturer of firearms, including rifles and carbines.  *Id.* ¶ 2.[8]  Colt, which has its

headquarters in West Hartford, Connecticut, has been doing business since at least 1850.  *Id.*[9]  In this

action, Colt alleges that it is the owner of the common-law trademarks "M16" and "CAR" and the

federally registered trademarks "MATCH TARGET" (Registration No. 2,003,594), "AR-15"

(Registration No. 825,581), "COLT AR-15" (Registration No. 827,453), "COLT AR-15 and design"

(Registration No. 830,862), "COMMANDO" (Registration No. 2,095,131), and "M4" (Registration

No. 2,734,001) (collectively, "Terms").  *Id.* ¶ 3.[10]  Colt has asserted six counts against Bushmaster,

---

qualifying a statement, has expressly controverted all or a portion of the underlying statement, I have deemed it admitted.

[7] Colt qualifies this statement, *see* Plaintiff's Opposing SMF ¶ 1; however, Bushmaster objects to its qualification as (i) an improper characterization, (ii) argumentative and (iii) without record support, *see* Defendant Bushmaster Firearms, Inc.'s Objections to Plaintiff's Response Statement of Material Facts ("SMF Objections"), Appendix to Defendant's Reply SMF, ¶ 1.  In response to this and Bushmaster's multitude of similar objections, Colt rejoins that it offers reasonable interpretations of the facts that the court should credit because it (Colt) is nonmovant.  *See* Plaintiff Colt Defense LLC's Response to Defendant Bushmaster Firearms, Inc.'s Request To Strike Statements of Fact ("Response to SMF Objections") (Docket No. 69) at 1-2.  Nonetheless, this court's practice has been to test whether statements (including characterizations) are substantially supported by the record citations provided.  If they are not, they are disregarded.  In this case, I agree with Bushmaster that Colt's qualification is not substantially supported by the record citations given.  Bushmaster's objection accordingly is sustained.

[8] Colt asserts that (i) its name is famous throughout the United States and the world and has long been associated in the minds of customers with high quality innovation, and (ii) many of its products have achieved legendary status, including the Colt 45 Peacemaker revolver, the Gatling Gun, the Thompson submachine gun, the M16 rifle and the M4 carbine.  *See* Colt's Opposing Statement of Additional Material Facts ("Plaintiff's Additional SMF"), commencing on page 16 of Plaintiff's Opposing SMF, ¶¶ 2-3.  I sustain Bushmaster's objections to these paragraphs, *see* Defendant's SMF Reply ¶¶ 2-3, on grounds that (i) I have already ruled that LaPlante is not qualified to testify with respect to these matters, and (ii) the cited portions of the report and deposition testimony of Colt expert Christopher Bartocci address only the fame of Colt's M16 and M4 firearms, not the fame of its name and products generally, *see* Expert Report of Christopher R. Bartocci ("Bartocci Report"), Exh. 1 to Declaration of Christopher R. Bartocci ("Bartocci Decl."), Attachment No. 16 to Plaintiff's Opposing SMF, ¶¶ 10-11, 14; Deposition of Christopher Bartocci ("Bartocci Dep."), Exh. D to Plaintiff's Opposing SMF, at 97-103.

[9] I incorporate Colt's qualification, *see* Plaintiff's Opposing SMF ¶ 2, to which Bushmaster did not object although the qualification was not supported by a record citation, *see* SMF Objections ¶ 2, inasmuch as it is apparent that the locus of Colt's headquarters is not in dispute.

[10] I incorporate the first sentence of Colt's qualification.  *See* Plaintiff's Opposing SMF ¶ 3; Declaration of Robert R. Seabold ("Seabold Decl."), Attachment Nos. 1-2 to Plaintiff's Opposing SMF, ¶ 3 & Exh. 1 thereto.  Bushmaster's objection to this sentence on the ground of declarant Robert Seabold's asserted lack of personal knowledge to authenticate a copy of a printout from the U.S. Patent and Trademark Office ("PTO") web site, *see* SMF Objections ¶ 3, is overruled.  As Colt suggests, *see* Response to SMF Objections at 3, ¶ 3, printouts from government web sites have been held to be self-authenticating pursuant to Federal Rules of (*continued on next page*)

alleging federal trademark infringement (Count I), false designation of origin (Count III), trade-dress infringement (Count V), false advertising (Count VII), common-law trademark infringement and unfair competition (Count IX) and federal trademark dilution of the M4 mark (Count XI).  *Id*. ¶ 4.  The firearms at issue in this litigation are either carbines or rifles.  *Id*. ¶ 5.  A carbine is a shoulder-fired firearm with a shorter barrel than a rifle.  *Id*.[11]

### Development of AR-15, M16 and M4 Firearms

The AR-15 (Armalite Rifle model 15) is a small-caliber, gas-operated firearm developed by Eugene Stoner and others while working at the Armalite Division of Fairchild Engine and Airplane Corporation ("Armalite").  *Id*. ¶ 6.  In 1959, Colt bought the right to develop and build the AR-15 from Armalite.  *Id*. ¶ 7.[12]  Colt later sold a variant of the AR-15 to the U.S. Air Force ("Air Force"), which designated the firearm the M16.  Defendant's SMF ¶ 7; Declaration of Charles W. Karwan in Support of Defendant's Motion for Summary Judgment ("Karwan Decl.") (Docket No. 44) ¶ 9.  Colt also sold a variant of the AR-15 to the U.S. Army ("Army"), which designated it the XM16E1. Defendant's SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8.[13]  The term "X" means "experimental" and is used by the U.S. government when evaluating prototypes or experimental versions of products before

---

Evidence 901(a) and/or 902(5), *see, e.g., EEOC v. E.I. Du Pont de Nemours & Co.*, No. Civ.A. 03-1605, 2004 WL 2347559, at *2 (E.D. La. Oct. 18, 2004); *Hispanic Broad. Corp. v. Educational Media Found.*, No. CV027134CAS (AJWX), 2003 WL 22867633, at *5 n.5  (C.D. Cal. Oct. 30, 2003).  Bushmaster's objection to the second sentence of Colt's qualification, *see* SMF Objections ¶ 3, is sustained on the basis that Colt offers no record citation in support thereof, *see* Plaintiff's Opposing SMF ¶ 3. Hereafter, whenever an objection is based on the absence of any supporting record citation, I will simply refrain from crediting the objected-to statement on that basis alone, but without specific mention.

[11] Colt qualifies this statement, asserting that a shorter barrel is only one difference between a carbine and a rifle; shorter overall length is another.  *See* Plaintiff's Opposing SMF ¶ 5; Bartocci Decl. ¶ 3; Deposition of Kenneth Maynard ("Maynard Dep."), Exh. C to Plaintiff's Opposing SMF, at 21.

[12] Although Bushmaster states that Colt "licensed" that right, *see* Defendant's SMF ¶ 7, Colt denies this, asserting that it bought it, *see* Plaintiff's Opposing SMF ¶ 7; Bartocci Decl. ¶ 4.   I have cast the statement in the light most favorable to Colt as nonmovant.

[13] Colt qualifies this statement, asserting that the "X" term is also used by private manufacturers and has been used by Colt to name its experimental weapons, for example the XM177 carbine and the XM4 carbine, without government designation.  *See* Plaintiff's Opposing SMF ¶ 8; Bartocci Decl. ¶ 5.  Bushmaster's objection to this qualification on the grounds that it is nonresponsive and without foundation, *see* SMF Objections ¶ 8, is overruled.

they are officially type-classified.  *Id*.  In 1967, the Army officially type-classified the firearm as a standard "U.S. Rifle, 5.56mm, M16A1."  *Id*.

In the early 1980s the U.S. government decided that it needed a more compact version of the M16.  *Id*. ¶ 9.  Colt originally designed and built the prototype for the Colt M4 carbine in the mid-1980s under a contract with the Army dated June 12, 1985.  Plaintiff's Additional SMF ¶ 10; Bartocci Decl. ¶ 17.  The contract called for [**REDACTED**].  *Id*.[14]  In April 1990 Bushmaster and the Army entered into a contract pursuant to which Bushmaster was to provide sixty-five carbines having "all the physical and technical characteristics of the M4 Carbine."  Defendant's SMF ¶ 45; Plaintiff's Opposing SMF ¶ 45.[15]  The 1990 contract identified the weapons to be built as [**REDACTED**].  Plaintiff's Additional SMF ¶ 114; Defendant's Reply SMF ¶ 114.[16]  Bushmaster completed delivery of these firearms and was paid by check dated June 27, 1990.  Defendant's SMF ¶ 45; Plaintiff's Opposing SMF ¶ 45.

In 1994 the U.S. government adopted a general-purpose military carbine and designated it the M4.  *Id*. ¶ 9.[17]  The M4 designation was the latest in a series of designations for carbines officially

---

[14] Bushmaster's objection to this paragraph on the ground of Bartocci's lack of personal knowledge, *see* Defendant's Reply SMF ¶ 10, is overruled.  Bartocci is offered as an expert in military small arms, including the AR15/M16/M4 weapon systems, and bases his statements on his expertise as well as his personal knowledge.  *See* Bartocci Decl. ¶ 1.  Bushmaster's objection to the phraseology of Colt's first sentence, *see* Defendant's Reply SMF ¶ 10, is sustained, and I have reworded it accordingly.  Colt itself admits, in the same paragraph, that the firearm it designed and built in 1985 was the prototype for its M4 carbine, not the M4 carbine itself.  *See* Plaintiff's Additional SMF ¶ 10.

[15] Colt qualifies this statement, asserting, *inter alia*, that [**REDACTED**].  Plaintiff's Opposing SMF ¶ 45; Bartocci Decl. ¶ 10.  Bushmaster's objection to this portion of Colt's qualification on the ground that it is not supported by the cited record, *see* SMF Objections ¶ 45, is overruled.

[16] I omit Colt's further statement regarding the 1990 contract, *see* Plaintiff's Additional SMF ¶ 115, sustaining Bushmaster's objection that declarant Seabold provides no basis for knowledge that the Colt documents attached to his affidavit are what they purport to be, *see generally* Seabold Decl.; *see also* Fed. R. Evid. 901(a) & (b)(1).

[17] Colt adds that when the Army decided not to continue developing the product, Colt developed the technical data package ("TDP") for the M4 carbine with its own private funding.  *See* Plaintiff's Additional SMF ¶ 11.  However, I sustain Bushmaster's objection to this statement on the ground that it is inappropriately supported by citation to caselaw and to a declaration of Colt's general counsel Carlton S. Chen, who lacks personal knowledge of the point.  *See* Defendant's Reply SMF ¶ 11; Declaration of Carlton S. Chen ("Chen Decl."), Attachment Nos. 3-15 to Plaintiff's Opposing SMF, ¶ 27 & Exh. 2 thereto.

adopted by the U.S. military since 1940, being preceded by M1, M1A1, M2 and M3.  *Id*.[18]  The M4

carbine shares approximately 80 percent parts commonality with the M16 rifle.  *Id*. ¶ 10.[19]  Colt's M4

carbine is a lightweight, gas-operated, air-cooled, magazine-fed, selective-rate weapon with a

collapsible stock.  Plaintiff's Additional SMF ¶ 5; Defendant's Reply SMF ¶ 5.

In the mid-1990s a dispute arose between Colt and the U.S. government concerning the scope

of, and the government's discharge of its responsibilities under, a technical data licensing agreement

that Colt and the U.S. military had executed in 1967 for the M16 rifle.  *Id*. ¶ 15.  Colt claimed that the

U.S. government had breached the 1967 license agreement by failing to protect Colt's proprietary data

adequately against improper disclosure to other potential suppliers.  *Id*. ¶ 16.  Colt and the U.S.

government settled the dispute by executing the "M4 Carbine Addendum To Technical Data Sales and

Patent License Agreement" (the "M4 Addendum").  *Id*. ¶ 17.  The M4 Addendum recognizes Colt's

claim to proprietary data rights in its M4 carbine and components.  Plaintiff's Additional SMF ¶ 18;

Chen Decl. ¶ 32 & Exh. 4 thereto, at COLT074631-34.[20]

---

[18] Colt qualifies paragraph 9 of the Defendant's SMF, asserting that (i) the U.S. government adopted Colt's M4 carbine and adopted the term M4 from the prior term XM4, and (ii) the apparent sequential linearity of the U.S. government type-classing structure is merely coincidental inasmuch as many other "M" designations have been made out of sequence for other military weapons systems. *See* Plaintiff's Opposing SMF ¶ 9; Bartocci Decl. ¶ 6; Declaration of Kenneth M. Maynard ("Maynard Decl."), Attachment No. 17 to Plaintiff's Opposing SMF, ¶ 4.  Bushmaster's objections to both parts of Colt's qualification, *see* SMF Objections ¶ 9, are overruled. As to the first part, I am satisfied that expert witness Maynard possesses sufficient personal knowledge to speak to the issue of the government's adoption of the M4 given his explanations that (i) during prior employment with Colt he was program manager for the M4 program, (ii) in that capacity he met with government officials to determine what features the government wanted, and (ii) he was an active designer and manager of the team that designed the Colt M4.  *See* Rebuttal Expert Report of Kenneth M. Maynard ("Maynard Report"), Exh. 1 to Maynard Decl., ¶ 8.  As to the second part, Colt's explanation of the nature of the military's "M"-series numbering is sufficiently responsive to the underlying statement to constitute a "qualification."

[19] Colt qualifies this statement, asserting, *inter alia*, that the parts-commonality requirement was imposed on Colt by the government for the M4 carbine.  *See* Plaintiff's Opposing SMF ¶ 10; Bartocci Decl. ¶ 7.  Bushmaster's objection to this portion of the qualification on the ground that it is nonresponsive, *see* SMF Objections ¶ 10, is overruled.  Colt's further qualification disputes Bushmaster's statement that the M4 "is essentially a modified version of the M16 with a collapsible buttstock and a shortened handguard and barrel." Defendant's SMF ¶ 10; *see also* Plaintiff's Opposing SMF ¶ 10; Bartocci Decl. ¶ 7.  In the spirit of viewing the cognizable evidence in the light most favorable to Colt as nonmovant, I have deleted that portion of Bushmaster's underlying statement.

[20] Bushmaster's objection to this statement on the ground that it is not supported by the citations given, *see* Defendant's Reply SMF ¶ 18, is sustained to the extent Colt states the M4 Addendum "establishes" Colt's claim to proprietary data rights, *see* Plaintiff's Additional SMF ¶ 18, and otherwise overruled.

The M4 Addendum, which Colt and the U.S. government signed in 1997, defines the term "M4 Carbine" as [**REDACTED**].  Plaintiff's Additional SMF ¶ 19; Defendant's Reply SMF ¶ 19.  The definition of "M4" in the M4 Addendum includes [**REDACTED**].  *Id*.  The M4 carbine fires semi-automatically or with three round bursts.  *Id*.

MIL-C-70559 is the military specification for the M4, which incorporates Colt's technical data package ("TDP").  Plaintiff's Additional SMF ¶¶ 11, 20; Deposition of Kevin Brown ("Brown Dep."), Exh. E to Plaintiff's Opposing SMF, at 50, 68.[21]  The M4 TDP consists of a series of prints and geometries (dimensions), a system of know-how, operation sheets, quality inspection methods and access to the master list of specifications and standards that comply with the requirements in Colt's contract with the U.S. military.  Plaintiff's Additional SMF ¶ 12; Defendant's Reply SMF ¶ 12.  The TDP outlines the manufacturing process, materials, tolerances, assembly, finishes, proof testing and dimensions needed to manufacture the weapon.  *Id*. ¶ 13.  The military specifications ("milspecs") and military standards ("milstds") into which Colt's TDP has been incorporated consist of more than two hundred extremely rigorous standards covering inspection, tolerances, targeting, endurance and interchangeability of parts.  Plaintiff's Additional SMF ¶ 28; Bartocci Decl. ¶ 20.[22]  Quality-assurance and conformance with milspecs and milstds are maintained by an onsite U.S. government inspector who keeps an office at Colt's factory and by a number of Colt's own inspectors.  Plaintiff's Additional

---

[21] Bushmaster's objections to this statement on grounds that the military specification itself is the best evidence of what it says and that the statement is partly unsupported by the citations given, *see* Defendant's Reply SMF ¶ 20, are overruled.  *See, e.g., R & R Assocs., Inc. v. Visual Scene, Inc.,* 726 F.2d 36, 38 (1st Cir. 1984) (noting that, although per Fed. R. Evid. 1002 a writing itself is required to "prove the content of a writing[,]" nothing prevents a declarant from testifying as to facts that also happen to be found in a writing).  Bushmaster alternatively denies the statement in part, *see* Defendant's Reply SMF ¶ 20; however, I view the cognizable evidence in the light most favorable to Colt as nonmovant.

[22] Bushmaster's objections to paragraph 28 on the bases that (i) it violates the best evidence rule, and (ii) Bartocci has not demonstrated that he is qualified to opine on this issue, *see* Defendant's Reply SMF ¶ 28, are overruled.  Bartocci is an expert in the field of military small arms, including the M4 weapons system.  *See* Bartocci Decl. ¶ 1.  His testimony regarding information that also happens to be contained in a separate document does not violate the best-evidence rule.  *See, e.g., Visual Scene*, 726 F.2d at 38.

SMF ¶ 29; Defendant's Reply SMF ¶ 29.[23]  In the last two years, Colt has fired more than 300,000 rounds of ammunition in testing the carbine and has not experienced a single malfunction.  Plaintiff's Additional SMF ¶ 35; LaPlante Dep. at 95.[24]

The M4-carbine TDP is proprietary to Colt, and the U.S. government has designated Colt its "sole source" supplier of M4 carbines.  Plaintiff's Additional SMF ¶ 14; Chen Decl. ¶ 28.[25]  Under the M4 Addendum, the U.S. government does not have the right to procure the M4 carbine on a competitive basis.  Plaintiff's Additional SMF ¶ 21; Chen Decl. ¶ 33.[26]  Under the M4 Addendum, only Colt can manufacture M4 carbines, except in very limited circumstances and subject to a royalty payment to Colt.  Plaintiff's Additional SMF ¶ 22; Chen Decl. ¶ 34 & Exh. 4 thereto at COLT074633-36.[27]  The M4 Addendum allows other qualified vendors to supply non-critical parts for the M4 carbine, but only if they are using Colt's TDP.  Plaintiff's Additional SMF ¶ 23; Defendant's Reply SMF ¶ 23.  Critical items include the upper and lower receivers, the hand guard, barrels and other components of the M4 carbine.  *Id.*[28]

In 1999 FN Manufacturing, Inc. ("FNMI"), a small-arms manufacturer that supplies M16 rifles to the U.S. government, challenged the government's decision to proceed with a sole-source

---

[23] Colt describes the rigorous standards that its M4 carbine must meet pursuant to the TDP.  *See* Plaintiff's Additional SMF ¶¶ 30-34.  I omit this detail inasmuch as it is not necessary to resolution of the instant motion.

[24] I set forth only the second sentence of paragraph 35, *see* Plaintiff's Additional SMF ¶ 35, sustaining Bushmaster's objection to the first sentence, *see* Defendant's Reply SMF ¶ 35, on the basis that LaPlante is not qualified to testify as to Colt's reputation among consumers.

[25] Bushmaster's objection to paragraph 14 on the basis that the M4 Addendum is the best evidence of the contractual relationship between Colt and the U.S. military, *see* Defendant's Reply SMF ¶ 14, is overruled.  The best-evidence rule does not prevent Chen from testifying to a fact that happens to be reflected in a writing.  *See, e.g., Visual Scene,* 726 F.2d at 38.

[26] Bushmaster's objections to paragraph 21 on grounds that it is conclusory and violates the best-evidence rule, *see* Defendant's Reply SMF ¶ 21, are overruled.  *See, e.g., Visual Scene.,* 726 F.2d at 38.  Bushmaster alternatively denies the paragraph, *see id.*; however, I view the cognizable evidence in the light most favorable to Colt as nonmovant.

[27] Bushmaster's objections to this statement on grounds that it is conclusory, not supported by the citations given and violates the best-evidence rule, *see* Defendant's Reply SMF ¶ 22, are overruled.  *See, e.g., Visual Scene.,* 726 F.2d at 38.  Bushmaster alternatively denies the statement, *see id.*; however, I view the cognizable evidence in the light most favorable to Colt as nonmovant.

[28] Bushmaster's objection to paragraph 23 on the basis of violation of the best-evidence rule, *see* Defendant's Reply SMF ¶ 23, is overruled, *see, e.g., Visual Scene,* 726 F.2d at 38.

procurement of M4 carbines from Colt.  *Id*. ¶ 24.  On August 9, 1999 the U.S. Court of Federal Claims upheld the legality of the M4 Addendum, and FNMI's challenge was dismissed.  *Id*. ¶ 25.[29]

### Sales of Colt, Bushmaster Firearms

Bushmaster and Colt each sell a distinct line of AR-15/M16-type rifles and M4-type carbines. Defendant's SMF ¶ 12; Declaration of John DeSantis ("DeSantis Decl.") (Docket No. 45) ¶ 3.[30] Bushmaster has been selling AR-15/M16/M4-type firearms and firearms parts in direct competition with Colt for more than 25 years.  *Id*.[31]  Bushmaster is the number-one producer of AR-15-type rifles and carbines in the U.S. commercial and law-enforcement markets.  Defendant's SMF ¶ 28; DeSantis Decl. ¶ 13.[32]  Both parties market carbines, using the term M4, to governmental and law-enforcement entities, both domestically and abroad, as well as to the public at large, and both do so by appearing at trade shows and via retail outlets.  Plaintiff's Additional SMF ¶ 122; Defendant's Reply SMF ¶ 122.[33] Indeed, the products are sold in the same stores and are lined up on the same shelves.  *Id*.

Bushmaster sells four distinct models of firearms: Carbon 15 rifles and carbines, .308-caliber rifles and carbines, XM15 E2S rifles and carbines, and M17S Bullpup carbines.  Defendant's SMF ¶ 13; Plaintiff's Opposing SMF ¶ 13.[34]  Bushmaster stamps each firearm with its name (B.F.I. or Bushmaster Firearms, Inc.), the location where the firearm was manufactured (Windham, Maine, or

---

[29] Bushmaster qualifies this statement, asserting that on the facts presented to the Court of Claims, it found that entering into the M4 Addendum constituted lawful agency action and a lawful exercise of procurement authority.  *See* Defendant's Reply SMF ¶ 25; Exh. 3 to Chen Decl. at 3.

[30] As part of its qualification of paragraph 12 of the Defendant's SMF, Colt denies that Bushmaster's lines of weapons are "distinct" from those of Colt.  *See* Plaintiff's Opposing SMF ¶ 12.  However, Bushmaster's objection to this response, *see* SMF Objections ¶ 12, is sustained on the ground that Colt's statement is not substantially supported by the record citations given.

[31] Colt qualifies this paragraph, asserting, *inter alia*, that Bushmaster has not been in direct competition with Colt in the U.S. military market for the M4 carbine inasmuch as Colt is the single source for that weapon to the U.S. military.  Plaintiff's Opposing SMF ¶ 12; Bartocci Dep. at 118.  I sustain Bushmaster's objection to the remainder of Colt's qualification, *see* SMF Objections ¶ 12, on the ground that it is not supported by the citations given.

[32] Colt does not specifically deny this portion of paragraph 28, *see* Plaintiff's Opposing SMF ¶ 28, which is supported by the citation given.

[33] My recitation incorporates Bushmaster's qualification – a point that I consider well-taken.

[34] Bushmaster's objection to Colt's qualification of this statement, *see* Plaintiff's Opposing SMF ¶ 13; SMF Objections ¶ 13, is (*continued on next page*)

Lake Havasu, Arizona), the distinctive Bushmaster snake logo and the model designation "Carbon 15," "XM15 E2S," "Bushmaster .308" or "M17S."  *Id*. ¶ 15.[35]  Bushmaster has never marked any of its products with any of the Terms.  Defendant's SMF ¶ 16; Plaintiff's Opposing SMF ¶ 16.

Bushmaster operates a web site, an 800 telephone number ordering system and a catalogue sales service to solicit sales throughout the United States.  Plaintiff's Additional SMF ¶ 50; Defendant's Reply SMF ¶ 50.  The covers of Bushmaster's brochures and catalogues prominently display the Bushmaster name.  Defendant's SMF ¶ 29; Plaintiff's Opposing SMF ¶ 29.  Virtually every page of Bushmaster's products brochures displays the Bushmaster name, and almost every model of firearm advertised in the product brochures is preceded by the name "Bushmaster," *e.g*., Bushmaster 16 Barreled Carbines, Bushmaster AK Carbines, Bushmaster Dissipator Carbines, Bushmaster V Match Rifle & Carbine.  *Id*. ¶ 30.[36]  Bushmaster's web site at www.bushmaster.com also displays the Bushmaster name and logo.  Defendant's SMF ¶ 31; DeSantis Decl. ¶ 16 & Exh. 3 thereto.[37]  Customers calling Bushmaster's 800 number are informed that they have reached Bushmaster Firearms.  Defendant's SMF ¶ 32; Plaintiff's Opposing SMF ¶ 32.

Bushmaster's XM15 E2S firearms are available in a variety of barrel lengths and with a variety of features and after-market accessories.  *Id*. ¶ 17.  Purchasers can choose from barrel lengths of 24, 20, 16, 14.5 or 11.5 inches, from barrel twists of 1 in seven inches, 1 in eight inches or 1 in nine

---

sustained on the ground that Colt's statement is not substantially supported by the record citations given.

[35] Colt and Bushmaster dispute whether Bushmaster's markings are "prominent."  *Compare* Defendant's SMF ¶ 15 *with* Plaintiff's Opposing SMF ¶ 15.  Bushmaster's objection to Colt's response on the bases that it is conclusory and that the exhibit on which Bushmaster relies speaks for itself, *see* SMF Objections ¶ 15, is overruled.  Bushmaster's characterization is just as conclusory as that of Colt.  Whether or not the markings are prominent is a matter of opinion, not something that can be definitively resolved by viewing the exhibit on which Bushmaster relies.  Hence, I omit the word "prominently" from Bushmaster's statement.  I also omit paragraph 14 of the Defendant's SMF, which Colt denies without objection from Bushmaster.  *See* Defendant's SMF ¶ 14; Plaintiff's Opposing SMF ¶ 14; SMF Objections ¶ 14.

[36] Colt and Bushmaster dispute whether the Bushmaster name is "prominently" displayed on virtually every page of its product brochures.  *Compare* Defendant's SMF ¶ 30 *with* Plaintiff's Opposing SMF ¶ 30.  Bushmaster's objection to Colt's response, *see* SMF Objections ¶ 30, is overruled.  Accordingly, I omit the word "prominently" from Bushmaster's statement.

[37] Bushmaster's objection to Colt's qualification, *see* Plaintiff's Opposing SMF ¶ 31; SMF Objections ¶ 31, is overruled.  Accordingly, (*continued on next page*)

inches, and from a wide variety of brakes, suppressors, compensators, pistol grips, buttstocks and handguards.  *Id*.  There are literally thousands of ways for a purchaser to customize his or her Bushmaster XM 15 E2S firearm.  Defendant's SMF ¶ 17; DeSantis Decl. ¶ 9.[38]  [**REDACTED**].  Defendant's SMF ¶ 18; Plaintiff's Opposing SMF ¶ 18.[39]  [**REDACTED**].  *Id*.  Colt also prominently displays its Colt name in its advertising and on its web sites.  *Id*.

There are four categories of purchasers to whom Bushmaster sells its XM15 E2S firearms: (i) commercial, (ii) law enforcement, (iii) U.S. government and military, and (iv) foreign.  *Id*. ¶ 33. The commercial market forms the largest part of Bushmaster's business, comprising roughly sixty percent of all sales.  *Id*.  The majority of Colt's sales are to the U.S. military through the Rock Island Arsenal, although it also sells to foreign governments and to U.S. law-enforcement agencies. Defendant's SMF ¶ 34; Declaration of Mark Eliason in Support of Defendant's Motion for Summary Judgment ("Eliason Decl.") (Docket No. 41) ¶ 4.[40]  [**REDACTED**], and Bushmaster does not consider Colt to be a viable competitor for commercial sales.  Defendant's SMF ¶ 34; Deposition of Stephen L. Clark ("Clark Dep."), Exh. F to Plaintiff's Opposing SMF, at 25, 28; Eliason Decl. ¶ 5.

---

I omit the words "clearly and prominently" from Bushmaster's statement.

[38] Colt contests this sentence on the basis of a lack of quantitative proof of "thousands."  *See* Plaintiff's Opposing SMF ¶ 17. I sustain Bushmaster's objection to Colt's response.  *See* SMF Objections ¶ 17. To the extent Colt means to offer a qualification, it omits any record citation; to the extent it means to lodge an objection, it offers no authority for the proposition that "quantitative" proof is required to buttress the testimony of a witness whose competence and qualifications to testify are not challenged.  In numerous other instances, Colt qualifies or denies one of Bushmaster's statements on the same ground: lack of quantitative proof.  *See* Plaintiff's Opposing SMF ¶¶ 36-39, 91. In all such instances, Colt repeats its objection.  *See* SMF Objections ¶¶ 36-39, 91. I sustain all of those clone objections for the same reasons I have sustained the instant objection, obviating the need to repeat this discussion each time the point is separately raised.

[39] Colt's objection to this statement on the basis of Bushmaster's use of generic terms to designate Colt's specific products, *see* Plaintiff's Opposing SMF ¶ 18, is sustained to the extent that I omit the word "type" from Bushmaster's descriptions of Colt's firearms. However, I continue to use the word "type," *e.g*., "M4-type," when discussing firearms other than those of Colt.

[40] I omit Bushmaster's further statement that "Colt has essentially withdrawn from the commercial market[,]" Defendant's SMF ¶ 34, which Colt disputes, see Plaintiff's Opposing SMF ¶ 34; Chen Decl. ¶ 5; Declaration of Michael Reissig ("Reissig Decl."), Attachment No. 20 to Plaintiff's Opposing SMF, ¶ 2. Bushmaster's objection to Colt's disputation of this fact, *see* SMF Objections ¶ 34, is overruled. Chen's and Reissig's flat-out statements that "Colt has not withdrawn from the commercial market" suffice to controvert Bushmaster's statement that it "has essentially withdrawn" from that market. I agree with Bushmaster, *see* SMF Objections ¶ 34, that the remaining sentences of paragraph 34 of the Defendant's SMF are not effectively controverted.

Colt's leading product today, in terms of sales volume and revenue, is its M4 carbine. Plaintiff's Additional SMF ¶ 4; Defendant's Reply SMF ¶ 4. Colt's worldwide sales of its M4 carbine were [**REDACTED**] in 2002 and [**REDACTED**] in 2003. *Id*. ¶ 6. Colt sells M4 carbines to the U.S. armed services, to many of the United States' allies in NATO and elsewhere, and to federal, state and local law-enforcement agencies. *Id*. ¶ 7.[41] By law, the M4 carbine cannot be sold to the general public. *Id*. ¶ 9.[42] In 1993 Bushmaster's gross sales were roughly [**REDACTED**]. Plaintiff's Additional SMF ¶ 124; Defendant's Reply SMF ¶ 124. In 2004 its gross sales were [**REDACTED**]. *Id*. In 1999 its sales of "all M4 Type XM15E2S rifles" totaled [**REDACTED**]. *Id*. In 2004, its sales of "all M4 Type XM15E2S rifles" totaled [**REDACTED**]. *Id*.

The Bushmaster XM E25 M4-type carbine sells for about $1,000 or more, and the Colt M4 carbine typically sells for between $1,100 and $1,400. Defendant's SMF ¶ 19; Plaintiff's Opposing SMF ¶ 19. Most civilian firearms purchasers would not spend $1,000 on a firearm without conducting research and engaging in comparison-shopping. Defendant's SMF ¶ 20; Report Re: Colt Defense, LLC v. Bushmaster Firearms, Inc. ("Karwan Report"), Exh. 2 to Karwan Decl., at 5.[43] [**REDACTED**]. Defendant's SMF ¶ 21; Rule 30(b)(6) Deposition of Colt through its designee Carlton S. Chen ("Colt Dep."), Exh. C to Defendant's SMF, at 214-16.[44] [**REDACTED**]. Defendant's SMF ¶ 22; Clark Dep.

---

[41] Colt adds that its customers rely on its outstanding reputation when selecting the M4 weapons system, *see* Plaintiff's Additional SMF ¶ 8; however, I sustain Bushmaster's objection to this statement on the basis that deponent Chen, Colt's general counsel, is not designated as an expert and does not otherwise demonstrate a foundation for that opinion, *see* Defendant's Reply SMF ¶ 8; Chen Decl. ¶ 1.

[42] Bushmaster qualifies this statement, admitting that the fully automatic version of the M4-type firearm, like any fully automatic firearm, cannot be sold to the general public but denying that other versions of the firearm, such as commercial versions of the Bushmaster XM15 E2S M4-type firearm, cannot be sold to the general public. *See* Defendant's Reply SMF ¶ 9; Supplemental Declaration of John A. DeSantis in Support of Defendant's Motion for Summary Judgment ("Suppl. DeSantis Decl.") (Docket No. 65) ¶ 3.

[43] Bushmaster's objection to Colt's denial of this statement, *see* SMF Objections ¶ 20, is sustained. Colt's statement does not actually controvert that of Bushmaster. *See* Plaintiff's Opposing SMF ¶ 20.

[44] Bushmaster's objection to Colt's denial of this statement, *see* SMF Objections ¶ 21, is sustained. Colt relies on a series of e-mails and other communications between Bushmaster and its customers. *See* Plaintiff's Opposing SMF ¶ 21; Plaintiff's Additional SMF ¶¶ 87-103. None of the cited communications evidences [**REDACTED**].

at 85-86.[45]  Similarly, Bushmaster is aware of no instance in which a purchaser has actually confused the source of Bushmaster's products with the source of Colt's products.  Defendant's SMF ¶ 23; Eliason Decl. ¶ 3.[46]

Bushmaster's direct sales to commercial purchasers include both firearms parts and after-market accessories through its web site and 1-800 number.  Defendant's SMF ¶ 35; Plaintiff's Opposing SMF ¶ 35.  Commercial purchasers can buy complete firearms and lower receivers only from a federally licensed firearms dealer, and only after submitting to a background check and completing a "Firearms Transaction Record Form" that lists, among other things, the manufacturer of the firearm, the type and caliber of firearm being purchased and the firearm's model and serial number.  *Id*.  Commercial purchasers are generally sophisticated and knowledgeable about the products they buy.  Defendant's SMF ¶ 36; Eliason Decl. ¶ 8.  They often have an interest in firearms generally, and they conduct research before purchasing a weapon.  *Id*.  They also typically are very familiar with the firearms they own and know the differences between the various firearms manufacturers and their products.  *Id*.[47]

Many of the civilian customers who purchase AR-15/M16-type rifles and M4-type carbines are also familiar with the web site www.ar15.com, an extremely popular online resource for firearms enthusiasts.  Defendant's SMF ¶ 37; Karwan Report at 5.[48]  The licensed firearms dealers from whom commercial purchasers buy firearms are very knowledgeable about the products they sell, and they sometimes guide customers toward products that best suit the purchaser's needs.  Defendant's SMF ¶

---

[45] Bushmaster's objection to Colt's denial of this statement, *see* Plaintiff's Opposing SMF ¶ 22; SMF Objections ¶ 22, is sustained for the reason given with respect to Plaintiff's Opposing SMF ¶ 21, above.

[46] Bushmaster's objection to Colt's denial of this statement, *see* Plaintiff's Opposing SMF ¶ 23; SMF Objections ¶ 23, is sustained for the reason given with respect to Plaintiff's Opposing SMF ¶ 21, above.

[47] I sustain Bushmaster's objection to Colt's denial of paragraph 36, *see* Plaintiff's Opposing SMF ¶ 36; SMF Objections ¶ 36, on grounds that (i) as previously noted, Colt's point regarding quantitative proof lacks merit, and (ii) Colt's assertion that commercial purchasers of firearms are influenced by marketing and advertising does not controvert Bushmaster's underlying statements.

[48] I omit the last two sentences of paragraph 37, which are neither admitted nor supported by the citation given.

38; Plaintiff's Opposing SMF ¶ 38.[49]  Firearms dealers sometimes give their opinions to customers about what the customer should consider when purchasing AR-15-, M16- or M4-type firearms, such as price, quality, reliability, accuracy, features and the availability of after-market accessories.  *Id*. ¶ 39.[50]

Most of the federal and state agencies and large police departments to which Bushmaster and Colt sell their products require sellers to participate in a formal bidding process.  Defendant's SMF ¶ 40; Declaration of Israel Anzaldua in Support of Defendant's Motion for Summary Judgment ("Anzaldua Decl.") (Docket No. 40) ¶ 2.  In most cases, the government agency issues a request for proposal that sets forth specific criteria and requirements that a prospective seller must meet to be awarded the contract.  Defendant's SMF ¶ 40; Anzaldua Decl. ¶ 3.  Because the prospective seller submits its bid directly to the procuring agency, it would be impossible for that agency to be confused as to the source of the product it is purchasing.  Defendant's SMF ¶ 40; Anzaldua Decl. ¶ 4.[51]

---

[49] My recitation reflects Colt's qualification that dealers "sometimes" (rather than "often," as Bushmaster originally stated) guide customers toward products that best suit their needs.  *Compare* Defendant's SMF ¶ 38 *with* Plaintiff's Opposing SMF ¶ 38. I overrule Bushmaster's objection to this portion of Colt's qualification.  *See* SMF Objections ¶ 38. This portion of Colt's response is neither "entirely consistent" with Bushmaster's statement nor reflects a contradiction between affiant Reissig's declaration, *see* Reissig Decl. ¶ 4, and the portion of his prior deposition testimony cited by Bushmaster, *see* Deposition of Michael Reissig ("Reissig Dep."), Exh. D to Defendant's SMF, at 81-82.  I sustain Bushmaster's objection to the remainder of Colt's qualification. Reissig's declaration that firearms dealers are "sometimes" knowledgeable, *see* Reissig Decl. ¶ 4, directly contradicts his earlier deposition testimony, *see* Reissig Dep., at 81, with no explanation given for the contradiction.  It is disregarded on that basis.  *See, e.g., Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4-5 (1st Cir.1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

[50] My recitation reflects Colt's qualification that dealers "sometimes" (rather than "often," as Bushmaster had stated) give opinions.  *Compare* Defendant's SMF ¶ 39 *with* Plaintiff's Opposing SMF ¶ 39;  Colt's objection to this qualification on the basis that it is consistent with Bushmaster's statement, *see* SMF Objections ¶ 39, is overruled.

[51] Colt denies paragraphs 40 and 41 and qualifies paragraphs 42 and 43 of the Defendant's SMF on the basis of an assertion that government agencies, law-enforcement purchasers, government purchasers and foreign purchasers "may" be confused as to the ultimate source of firearms in certain enumerated circumstances.  *See* Plaintiff's Opposing SMF ¶¶ 40-43. Colt relies for this proposition on a declaration of its director of sales and marketing, Michael Reissig, *see* Reissig Decl. ¶¶ 1, 3; in addition, with respect to government agencies, it relies as well on testimony of Stephen L. Clark, *see* Clark Dep. at 92-93.  I sustain Bushmaster's objections to these responses, *see* SMF Objections ¶¶ 40-43, on the bases that (i) lay witness Reissig's opinion constitutes speculation rather than being rationally based on perception, as required by Federal Rule of Evidence 701, *see* Fed. R. Evid. 701; *United States v. Santos*, 201 F.3d 953, 963 (7th Cir. 2000) (inference drawn by lay witness "must be tethered to perception, to what the witness saw or heard."), and (ii) the cited testimony of Clark does not support Colt's statements.

Law-enforcement purchasers are typically sophisticated purchasers.  Defendant's SMF ¶ 41; Anzaldua Decl. ¶ 5.  Prior to purchase, most such purchasers test and evaluate the firearms.  *Id*.  The individual law-enforcement purchasers who purchase firearms for their personal use typically do so by purchasing directly from the manufacturer or through knowledgeable, licensed firearm dealers or distributors who know the differences between Colt and Bushmaster products.  Defendant's SMF ¶ 41; Anzaldua Decl. ¶ 6.  In those instances in which a law-enforcement purchaser contacts a manufacturer directly, the purchaser is aware of the source of the product sought.  Defendant's SMF ¶ 41; Anzaldua Decl. ¶ 7.

Bushmaster's U.S. government purchasers consist of departments and agencies of the United States, including the Departments of Defense, State, Interior and Energy, the FBI and Customs.  Defendant's SMF ¶ 42; Plaintiff's Opposing SMF ¶ 42.  The purchasing department typically tests the firearms before purchasing them.  *Id*.  Many sales are done on a competitive-bid basis, where the purchasing department accepts offers from several different manufacturers.  *Id*.[52]  Government purchasers are typically provided with samples of the firearms prior to purchase.  *Id*.  Most of the departments are fairly sophisticated in their procurement approach.  *Id*.

Foreign purchasers make considered decisions about which firearm to buy.  *Id*. ¶ 43.  [**REDACTED**].  *Id*.  The purchasing country typically tests the firearms before purchasing them.  *Id*.  Many sales are done on a competitive-bid basis, where the purchasing department accepts offers from several different manufacturers.  *Id*.  Foreign customers typically are provided with samples of the firearms prior to purchase.  *Id*.  Generally, each country requires that the firearms it is purchasing meet a set of specifications.  *Id*.  Most of the foreign-government purchasers are fairly sophisticated in their

---

[52] I have corrected an obvious error in Bushmaster's statement.  Although the statement refers to the "purchasing country," *see* Defendant's SMF ¶ 42, the underlying affidavit refers to the "purchasing department[,]" Anzaldua Decl. ¶ 10.

procurement approach.  *Id*.  Foreign sales require export licenses and prior approval from the U.S. Department of State.  *Id*.  Foreign governments know from whom they are buying firearms.  *Id*.

[**REDACTED**].  *Id*. ¶ 44.[53]  [**REDACTED**].  *Id*.[54]

Bushmaster's intent in making limited use of the terms AR-15-type, M16-type and M4-type in its advertising is to refer to particular types of firearms and firearm parts, not to trade on any goodwill that Colt believes it has.  Defendant's SMF ¶ 27; DeSantis Decl. ¶ 12.  Indeed, rather than attempting to trade on the Colt name, Bushmaster does not want to be associated with Colt and has made a conscious effort to distinguish itself from Colt.  *Id*.[55]

## Use of the Term M4

The U.S. government coined the term M4.  Defendant's SMF ¶ 88; Colt Dep. at 51.[56]  The term M4 is a U.S. government designation for a specific type of firearm.  Defendant's SMF ¶ 89; Maynard Dep., Exh. I to Defendant's SMF ("Maynard Dep./Defendant"), at 20-21.[57]  The U.S. government has assigned a National Stock Number ("NSN") to the M4, NSN 1005-01-231-0973.  Defendant's SMF ¶ 90; Plaintiff's Opposing SMF ¶ 90.  The term "M" is an abbreviation for "Model" that is used not only

---

[53] Colt offers several statements regarding asserted instances of actual confusion among foreign purchasers of firearms.  *See* Plaintiff's Additional SMF ¶¶ 104-10.  I sustain Bushmaster's objections to (i) paragraph 104, *see* Defendant's Reply SMF ¶ 104, on the bases that the statements therein are predicated on hearsay and that neither Chen nor Reissig is designated as an expert on the subject of consumer confusion, (ii) paragraph 105, *see id*. ¶ 105, on the bases that Seabold demonstrates no foundation to authenticate the document in question (Exhibit 25 to his declaration), and the first sentence in any event states a legal conclusion, and (iii) paragraphs 106-10, *see id*. ¶¶ 106-10, on the basis that the statements therein are predicated on hearsay.

[54] Colt qualifies this statement, asserting that although it has attempted to correct misleading information of which it is aware, it cannot represent that this was done in every instance or that the corrective action always was effective.  *See* Plaintiff's Opposing SMF ¶ 44; Reissig Decl. ¶ 5.  Bushmaster's objection to this qualification on grounds that it is consistent with Bushmaster's statement and in any event nonresponsive, *see* SMF Objections ¶ 44, is overruled.

[55] I sustain Bushmaster's objection to Colt's denial of paragraph 27, *see* Plaintiff's Opposing SMF ¶ 27; SMF Objections ¶ 27, on the bases that the denial is argumentative, speculative and not made on the basis of personal knowledge of declarant Chen.

[56] I omit the second, third and fourth sentences of paragraph 88, *see* Defendant's SMF ¶ 88, which are neither admitted nor supported by the citation given.  With respect to the first sentence, I sustain Bushmaster's objection to Colt's denial, *see* Plaintiff's Opposing SMF ¶ 88; SMF Objections ¶ 88, on the basis of improper citation to eighteen paragraphs of the Plaintiff's Additional SMF that do not, in any event, controvert the underlying statement.

[57] I omit the first sentence of paragraph 89 and portions of the second sentence that are neither admitted nor supported by the citations given.  With respect to the balance, I sustain Bushmaster's objection to Colt's denial, *see* Plaintiff's Opposing SMF ¶ 89; SMF Objections ¶ 89, on the ground of nonresponsiveness.

with carbines but also with other small arms and military equipment.  Defendant's SMF ¶ 91; Karwan Decl. ¶ 14.  For example, the U.S. military has designated an M1 rifle, M14 rifle, M1 submachine gun and M3 submachine gun.  *Id*.  The Sherman tank was known as the M4, and the U.S. military has designated an M4 bayonet.  *Id*.

Bushmaster first began using the term M4 in its advertising at least as early as 1991.  Defendant's SMF ¶ 46; Plaintiff's Opposing SMF ¶ 46.  Bushmaster's 1991 catalogue referred to its 1990 sale of the M4-type carbines to the Army and pictured an M4-type barrel assembly that could be separately sold or incorporated into a completed firearm.  *Id*.[58]  In the spring of 1992 Fighting Firearms, a popular magazine directed toward firearms enthusiasts, published an article written by Peter Kokalis highlighting the fact that Bushmaster sold M4-type carbines to the special operations forces of the U.S. military.  *Id*. ¶ 47.  The article contained a picture of Bushmaster's XM15 E2S M4-type carbine and provided a detailed review of the firearm.  *Id*.[59]  Since 1991, Bushmaster has continuously used the term M4 in its advertising in connection with the sale of its XM15 E2S firearms.  Defendant's SMF ¶ 48; DeSantis Decl. ¶ 23.  Colt admits that it did not use the term M4 in commerce until May 28, 1993.  Defendant's SMF ¶ 49; Plaintiff's Opposing SMF ¶ 49.[60]

---

[58] I sustain Bushmaster's objection to Colt's qualification of this paragraph, *see* Plaintiff's Opposing SMF ¶ 46; SMF Objections ¶ 46, on the ground of irrelevance.

[59] I sustain Bushmaster's objection to Colt's qualification of paragraph 47.  *See* Plaintiff's Opposing SMF ¶ 47; SMF Objections ¶ 47.  The first sentence of the qualification violates the best evidence rule by proffering the testimony of Bartocci, rather than the magazine article itself, to prove the contents of the article.  *See, e.g., Visual Scene*, 726 F.2d at 38.  The second sentence is supported by a declaration of Bartocci for which he supplies no foundation of personal knowledge, *see* Bartocci Decl. ¶ 11, and by a citation to an exhibit that Seabold does not offer sufficient foundation to authenticate, *see* Exh. 3 to Seabold Decl.  The third sentence is supported by deposition testimony in which the deponent himself states that [**REDACTED**].  *See* Maynard Dep. at 82.

[60] I sustain Bushmaster's objections to Colt's qualification of paragraph 49.  *See* Plaintiff's Opposing SMF ¶ 49; SMF Objections ¶ 49.  In its first sentence, Colt asserts that it has found documentary evidence, previously overlooked, indicating its use of the term M4 prior to 1993.  *See* Plaintiff's Opposing SMF ¶ 49.  Bushmaster points out that the exhibit on which Colt relies for this proposition (Exhibit 4 to the Seabold Declaration) is unauthenticated, *see* SMF Objections ¶ 49; in response, Colt explains: "Mr. Seabold's duties include receipt and maintenance of Colt's documents as well as Bushmaster's, and Colt apologizes for this fact being inadvertently omitted from the Seabold Declaration.  Accordingly, documents produced by Colt, as were the documents at issue here, should be properly authenticated."  Response to SMF Objections at 6, ¶ 49.  There are two problems with this response.  First, the ability afforded by Local Rule 56 to respond to an evidentiary objection does not constitute an invitation to tender new evidence or record citations omitted – inadvertently or otherwise – from a statement of material facts.  Second, in any event, Colt neglects to attach any (*continued on next page*)

Bushmaster began using the term "M4-type" in 1997 "[i]n an effort to reduce the confusion." Plaintiff's Additional SMF ¶ 83; Deposition of John DeSantis ("DeSantis Dep."), Exh. O to Plaintiff's Opposing SMF, at 88.[61]  If a country or its decision makers see that the U.S. armed forces are using a specific product, they tend to want to buy that product, too.  Plaintiff's Additional SMF ¶84; Defendant's Reply SMF ¶ 84.[62]  Bushmaster's warranty has stated:

> We are a U.S. Government Defense Contractor.  After inspection and testing of samples for our most recent contract – the M16 A2 Carbine M4, our quality passed the most stringent U.S. military specifications.  We won the contract, delivered, and were paid in full.  As a matter of public record only Colt and FN can make the same claim.

*Id*. ¶ 125.[63]

Numerous firearms manufacturers other than Colt have used the term M4 for years to refer to military-style carbines with collapsible buttstocks and shortened barrels.  Defendant's SMF ¶ 92; Plaintiff's Opposing SMF ¶ 92.  For example, in addition to Bushmaster, at least fifteen other manufacturers use or have used the term M4 in their advertising, including American Spirit Arms, Armalite, ARMS, Barrett Firearms Manufacturing, Double Star Corp., DMPS/Panther Arms, DSA, Fulton Armory, Knight's Manufacturing, Kurt's Kustom Firearms, Lauer Custom Weaponry, Les Baer

---

[61] I omit the first sentence of paragraph 83, *see* Plaintiff's Additional SMF ¶ 83, sustaining Bushmaster's objection that it is not fairly supported by the citation given, *see* Defendant's Reply SMF ¶ 83.  Bushmaster alternatively denies the paragraph, *see* Defendant's Reply SMF ¶ 83; however, I view the cognizable evidence in the light most favorable to Colt as nonmovant.

[62] Colt adds that Bushmaster frequently uses Colt trademarks, such as M4, in its catalogues in a manner "adapted to suggest that Bushmaster sells products by those names."  Plaintiff's Additional SMF ¶ 51.  I sustain Bushmaster's objection to this statement, *see* SMF Objections ¶ 51, on the basis that declarant Chen has neither been designated as an expert on this issue nor demonstrates personal knowledge regarding Bushmaster's intent.  Colt also offers numerous examples of Bushmaster's use of the term M4, *e.g.*, in advertising, in invoices and in e-mails with customers.  *See* Plaintiff's Additional SMF ¶¶ 52-62, 65, 67, 101-03.  I need not delve into these examples for purposes of resolution of the instant summary-judgment motion and therefore omit them.

[63] Bushmaster's objection to this paragraph is more in the nature of a qualification: that Colt adduces no evidence that this warranty language was used on more than one occasion.  *See* Defendant's Reply SMF ¶ 125; Exh. 29 to Seabold Decl.

Custom, Olympic Arms and River Rock Arms. *Id.* [**REDACTED**]. Defendant's SMF ¶ 93; Colt Dep. at 125-28.[64]

Firearms manufacturers have also used the term M4 to designate firearms that are very different than the M4 carbine produced by Colt. Defendant's SMF ¶ 94; Plaintiff's Opposing SMF ¶ 94. For example, in the 1950s, the Air Force adopted a bolt-action .22 Hornet survival rifle that was officially designated as the "Rifle Survival, .22 M4." *Id.* Armi Benelli of Italy uses the term M4 to designate the commercial version of its military M1014 semiautomatic shotgun. *Id.* The Italian manufacturer Sites produces a submachine gun known as the M4 Spectre, Beretta marketed a small .22-caliber pistol as the Minx M4, and Hungary makes a heavy sniper/anti-material rifle known as the Gepard M4. *Id.* Articles have appeared in Soldier of Fortune, Special Weapons, and Guns & Weapons for Law Enforcement in which the term M4 is used to describe military-style carbines other than those of Colt. Defendant's SMF ¶ 95; Exhs. 5-13 to Declaration of Christopher R. Drury in Support of Defendant's Motion for Summary Judgment ("Drury Decl.") (Docket No. 51).[65] In a 2004 edition of Shot Gun News, numerous firearms manufacturers used the term M4 to describe their products. Defendant's SMF ¶ 96; Plaintiff's Opposing SMF ¶ 96.[66] Numerous articles also have been written about the M4 identifying it as a Colt product. Plaintiff's Additional SMF ¶ 113; LaPlante Report ¶ 10.[67]

---

[64] My recitation omits the first part of Bushmaster's original statement, *see* Defendant's SMF ¶ 93, which Colt effectively denies, *see* Plaintiff's Opposing SMF ¶ 93; Chen Decl. ¶ 14; Response to SMF Objections at 8, ¶ 93.

[65] I omit the first sentence of paragraph 95 of the Defendant's SMF, as well as a reference in the second sentence to the magazine Fighting Firearms, which are neither admitted nor supported by the record citations given. I sustain Bushmaster's objection to Colt's denial of the statement, *see* Plaintiff's Opposing SMF ¶ 95; SMF Objections ¶ 95, on the basis that it does not effectively controvert the underlying statement.

[66] I sustain Bushmaster's objection to Colt's qualification, *see* Plaintiff's Opposing SMF ¶ 96; SMF Objections ¶ 96, on the grounds that Chen's declaration discloses no basis for his statement, he has not talked to consumers, nor has he been designated an expert on such uses, *see* Chen Decl. ¶ 1.

[67] I omit Colt's further statements that "[t]he Colt M4® is one of the most widely used weapons" and that the articles in question are "unsolicited," Plaintiff's Additional SMF ¶ 113, on the basis that they are neither admitted by Bushmaster nor supported by the citations given. Colt omits any pinpoint pages for its citation to Exhibit 5 to the Chen Declaration, which consists of numerous pages, (*continued on next page*)

Many manufacturers of airguns and paintball guns, including but not limited to Sniper Country (Olympic Brand), Spartan Imports (Armalite Brand), ICS (Olympic Arms Brand), Hobby Warehouse and Battlefield Sport, also use the term M4 to describe their products. Defendant's SMF ¶ 97; Plaintiff's Opposing SMF ¶ 97.[68] Colt has used the term M4 as a noun to describe its products. *Id.* ¶ 98. For example, Colt has advertised the sale of an M16A2 M4, a Commando M4, a Match Target M4 and an LE M4. *Id.*[69] [**REDACTED**]. *Id.* ¶ 99.

Patent No. 6,792,711, issued to Vincent Battaglia on September 21, 2004, uses the term M4-type as a generic designation for a particular type of military-style firearm. *Id.* ¶ 105.[70] For example, the patent refers to "the M4 type rifles and carbines (the current descendents of the original M16 type rifle)" and states that "in the hands of the military, the M4 type firearm has morphed into an M4 type weapon system." *Id.*

Bushmaster's own files contain documents reflecting contacts from customers regarding purchase of an M4 carbine. Plaintiff's Additional SMF ¶ 86; Defendant's Reply SMF ¶ 86.[71]

In an undated e-mail to Bushmaster, [**REDACTED**] wrote that [**REDACTED**]. *Id.* ¶ 87. He added: [**REDACTED**]. *Id.*[72]

---

many of which appear to have no bearing on the points made; hence, I do not take that citation into consideration.

[68] Colt qualifies this statement, asserting that use of the term M4 with respect to some airgun and paintball products is a licensed use of its M4 mark and that Colt has successfully terminated unlicensed use of its M4 mark by other airgun and paintball product manufacturers. *See* Plaintiff's Opposing SMF ¶ 97; Chen Decl. ¶ 16. Bushmaster's objection to this qualification on the basis of nonresponsiveness, *see* SMF Objections ¶ 97, is overruled.

[69] Colt qualifies paragraph 98, asserting , *inter alia*, that Colt has used the term M4 to describe a family of products. *See* Plaintiff's Opposing SMF ¶ 98; Maynard Decl. ¶ 9. I sustain Bushmaster's objection to the remainder of Colt's qualification, *see* SMF Objections ¶ 98, on the ground that the declarant on whom Colt relies (Maynard) is not designated as an expert on the issue discussed – a characterization that Colt does not contest, *see* Response to SMF Objections at 8.

[70] My recitation incorporates Colt's qualifications, *see* Plaintiff's Opposing SMF ¶ 105; Chen Decl. ¶ 19, but for its assertion that the patent "does not use the term 'M4' generically," with respect to which I sustain Bushmaster's objection on the ground that the declarant on whom Colt relies (Chen) is not designated as an expert to give such opinions – a characterization that Colt does not dispute, *see* Response to SMF Objections at 8.

[71] I sustain Bushmaster's objection to paragraph 86 as originally worded on the basis that it was argumentative and not a fair characterization of the evidence summarized. *See* Plaintiff's Additional SMF ¶ 86; Defendant's Reply SMF ¶ 86.

[72] I sustain Bushmaster's objection to paragraph 85 of the Plaintiff's Additional SMF, *see* Defendant's Reply SMF ¶ 85, on the bases that the first sentence is not supported by the citation given and, in any event, the entire paragraph is the product of hearsay inasmuch (*continued on next page*)

In an e-mail dated December 1, 2001 to Bushmaster from [**REDACTED**], a potential customer requested [**REDACTED**].  *Id*. ¶ 88.[73]  He indicated that he had [**REDACTED**].  *Id*.  In an e-mail dated August 12, 2002 to Bushmaster from a potential customer who worked for [**REDACTED**], the writer requested that Bushmaster [**REDACTED**].  *Id*. ¶ 89.  In an e-mail dated November 28, 2002 to Bushmaster, a potential customer with [**REDACTED**] requested [**REDACTED**].  *Id*. ¶ 90.  In an e-mail dated August 15, 2003 to Bushmaster from a potential customer at the [**REDACTED**], the writer requested [**REDACTED**].  *Id*. ¶ 91.[74]

In an e-mail dated February 26, 2004 to Bushmaster that bears the subject heading [**REDACTED**], a potential customer requested [**REDACTED**].  *Id*. ¶ 92.  On March 15, 2004 a customer sent an e-mail to Bushmaster stating, [**REDACTED**].  *Id*. ¶ 93.  On March 24, 2004 [**REDACTED**] sent an e-mail to Bushmaster stating, [**REDACTED**].  *Id*. ¶ 94.  In an e-mail dated April 28, 2004 to Bushmaster, a potential customer sought [**REDACTED**].  *Id*. ¶ 95.  In an e-mail dated July 15, 2004 to Bushmaster, a customer sought [**REDACTED**].  *Id*. ¶ 96.

On August 5, 2004 a customer sent an e-mail to Bushmaster asking, [**REDACTED**].  *Id*. ¶ 97.  In a letter dated August 26, 2004 from [**REDACTED**] to Bushmaster, the author confirmed [**REDACTED**].  *Id*. ¶ 98.  On September 16, 2004 a customer sent an e-mail to Bushmaster asking, [**REDACTED**].  *Id*. ¶ 99.  In an e-mail dated October 25, 2004 to Bushmaster from a potential customer in [**REDACTED**], the writer requested [**REDACTED**].  *Id.* ¶ 100.

---

as Chen had no personal knowledge of the alleged instances of confusion, *see* Colt Dep., Exh. L to Plaintiff's Opposing SMF ("Colt Dep./Plaintiff"), at 223-25.

[73] My recitation incorporates Bushmaster's qualification, which is supported by the citation given.  *See* Defendant's Reply SMF ¶ 88; Exh. 12 to Seabold Decl.

[74] My recitation incorporates Bushmaster's qualification, which is supported by the citation given.  *See* Defendant's Reply SMF ¶ 91; Exh. 15 to Seabold Decl.

In an undated "Order for Supplies or Services," the U.S. Department of Energy specified its order for [**REDACTED**].  *Id*. ¶ 63.  In a purchase order from the State of California dated June 30, 1999, the order specified a request for [**REDACTED**].  *Id*. ¶ 64.  In a letter dated May 13, 1999 from Bushmaster to the California Highway Patrol, the author quoted a price for [**REDACTED**].  *Id*. ¶ 66.  In another letter dated November 6, 2001 from the California Highway Patrol to Bushmaster, the author noted that the letter served to [**REDACTED**].  *Id*.[75]

### M4 Trade Dress

In its complaint, Colt claims that the protectable trade-dress features of the M4 carbine are its overall shape, including "the corrugated handguard and hand grip, the distinct sights and handle, the adjustable butt stock, the barrel shape, and the coloration."  Defendant's SMF ¶ 50; Plaintiff's Opposing SMF ¶ 50.  [**REDACTED**].  *Id*. ¶ 51.  [**REDACTED**].  *Id*.

[**REDACTED**].  Defendant's SMF ¶ 89; Maynard Dep./Defendant at 92-93.[76]  The barrel delivers and directs the fired round, as well as imparting spin to the bullet.  Defendant's SMF ¶ 52; Plaintiff's Opposing SMF ¶ 52.  The barrel supports the gas block and front sight, as well as allowing attachment of the handguard and grenade launcher.  *Id*.  The 14.5-inch barrel length creates a more compact firearm that is easier to maneuver inside vehicles without becoming entangled in such items as seatbelts, safety harnesses and parachute harnesses.  *Id*. The sight allows the firearm to be aimed.  *Id*. ¶ 53.  It is raised to coincide with the raised rear sight so that the firearm can be aimed accurately.

---

[75] Colt adds that "Bushmaster's use of the M4® mark will cause confusion regarding the source and sponsorship of Colt's M4® mark."  Plaintiff's Additional SMF ¶ 118.  However, I sustain Bushmaster's objection to this statement, *see* Defendant's Reply SMF ¶ 118, on the bases that it is vague and states a legal conclusion.

[76] Colt denies this statement, and qualifies paragraphs 52, 53, 54, 56, 57, 58 and 59 of the Defendant's SMF, with similarly worded assertions regarding asserted arbitrary design choices made with respect to its M4 carbine.  *See* Plaintiff's Opposing SMF ¶¶ 52-54, 56-59, 89.  These statements are buttressed by citation to affidavits and/or testimony of Chen and Maynard.  *See id*.  I sustain Bushmaster's objections to these responses, *see* SMF Objections ¶¶ 52-54, 56-59, 89, on grounds that Chen demonstrates no basis for personal knowledge of M4 design and has not been designated as an expert on functionality, and Maynard has been designated only as a rebuttal witness on the issue of genericness and not timely designated to opine as to functionality.  Colt does not contest these (*continued on next page*)

*Id*.  The ribbed surface of the handguard provides a non-slip grip for the user.  *Id*. ¶ 54.
[**REDACTED**].  *Id*.  The collapsible buttstock has several functional purposes.  *Id*. ¶ 56.  It, in
conjunction with the M4 carbine's shorter barrel, makes the firearm easier to stow and carry.  *Id.* The
collapsible buttstock allows the user to vary the distance between the butt and the trigger so as to
improve accuracy.  *Id*.[77]

Patent No. 3,348,328, issued to R.E. Roy on October 24, 1967, discloses an adjustable
buttstock assembly that is similar to the collapsible buttstock found on Colt's M4 carbine.  *Id*. ¶ 57.
Patent No. 3,236,155, issued to F.E. Sturtevant on February 22, 1966, discloses an M16-style
"forward assist," which is found on Colt's M4 carbine.  *Id*. ¶ 58.  Patent No. 4,536,982, issued to Seth
K. Bredbury and Harold J. Waterman, Jr., on August 27, 1985, discloses a cylindrical rifle handguard
assembly that is similar to the outer appearance of the handguard assembly found on Colt's M4
carbine.  *Id*. ¶ 59.  All of the above patents were assigned to Colt.  *Id*. ¶ 60.

Photographs of soldiers carrying Colt's M4 carbine are frequently found on the covers of
leading mass-distributed news magazines and newspapers reporting on the conflicts in Iraq,
Afghanistan and elsewhere.  Plaintiff's Additional SMF ¶ 38; Chen Decl. ¶ 41.[78]  There is a
substantial value to the non-military commercial market in producing a weapon that looks and feels
like a genuine military weapon.  Plaintiff's Additional SMF ¶ 45; Defendant's Reply SMF ¶ 45.
Bushmaster's own expert stated that customers seek, and Bushmaster provides, "an M4 type carbine
that has most of the features and look of a military M4."  *Id*. ¶ 123.  Bushmaster's XM-15 E2S M4-
type carbine is, for all intents and purposes, identical in appearance to Colt's M4 carbine.  Plaintiff's

---

characterizations in its response to the SMF Objections.  *See* Response to SMF Objections at 6, ¶¶ 52-54, 56-59, & 7-8, ¶ 89.
[77] Bushmaster further asserts that the angle of the magazine well decreases the number of failures to feed, *see* Defendant's SMF ¶ 55;
however, Colt denies this statement, *see* Plaintiff's Opposing SMF; Bartocci Decl. ¶ 14, and I view the cognizable evidence in its favor
as nonmovant.
[78] I sustain Bushmaster's objection to the first sentence of this paragraph, *see* Defendant's Reply SMF ¶ 38, on the basis that LaPlante
(*continued on next page*)

Additional SMF ¶ 49; LaPlante Dep. at 26-28.  Bushmaster's M4-type carbine has each visual feature of the Colt M4 carbine.  *Id*.[79]

Bushmaster has made M4-type carbines that look similar to those made by Colt since at least as early as 1986.  Defendant's SMF ¶ 61; Plaintiff's Opposing SMF ¶ 61.[80]  [**REDACTED**].  *Id*. ¶ 62.[81]  [**REDACTED**].  *Id*. ¶ 63.[82]

[**REDACTED**].  *Id*. ¶ 64.[83]  [**REDACTED**].  *Id*. ¶ 65.  [**REDACTED**].  *Id*.  [**REDACTED**]. *Id*.

### Use of Terms Other Than M4

Because the M16-type rifle and the M4-type carbine both derive from the original AR-15 developed by Armalite, firearms purchasers often use the term AR-15 to refer to semiautomatic versions of the M16-type rifle or M4-type carbine that may be purchased by civilians.  *Id*. ¶ 11.[84]  Bushmaster has never used the registered marks "COLT AR-15" or "COLT AR-15 and Design" in its

---

is not an expert on whether the profile of the M4 is distinctive and easily recognizable by the public.

[79] Bushmaster's objection to paragraph 49 on the basis that it is inadmissible because unhelpful to the fact-finder, *see* Defendant's Reply SMF ¶ 49, is overruled.  Bushmaster alternatively qualifies the paragraph, noting that because its firearm can be configured in many ways, not all versions look identical to Colt's and, indeed, one version of the XM15 E2S M4-type carbine that it commonly sells has a differently shaped hand guard, different compensator and different buttstock than the Colt M4 firearm.  *See* Defendant's Reply SMF ¶ 49; DeSantis Decl. ¶ 9; Suppl. DeSantis Decl. ¶ 4.  I sustain Bushmaster's objections to (i) paragraph 39, *see* Plaintiff's Additional SMF ¶ 39; Defendant's Reply SMF ¶ 39, on the bases that Maynard is not designated as an expert with respect to these matters, *see* Exh. 1 to Maynard Decl. ¶¶ 9-20, Chen is not designated as an expert at all, LaPlante is not qualified to testify as to whether the shape of the M4 carbine is "distinctive" and his remaining statement that the look of the M4 carbine "is not totally determined by functional aspects" is conclusory, (ii) paragraphs 40, 42 and 46, *see* Plaintiff's Additional SMF ¶¶ 40, 42, 46; Defendant's Reply SMF ¶¶ 40, 42, 46, on the basis that they are irrelevant, (iii) paragraph 41, *see id*. ¶ 41, on the basis that it states a legal conclusion, (iv) paragraphs 44 and 48, *see id*. ¶¶ 44, 48, on the bases that they are argumentative and paragraph 48 states a legal conclusion, and (v) paragraph 126, *see id*. ¶ 126, on the basis of lack of proper authentication.

[80] I sustain Bushmaster's objection to Colt's qualification of this statement, *see* Plaintiff's Opposing SMF ¶ 61; SMF Objections ¶ 61, on the basis that it is argumentative.

[81] My recitation incorporates Colt's qualification, *see* Plaintiff's Opposing SMF ¶ 62, to which Bushmaster interposes no objection; *see* SMF Objections ¶ 62.

[82] I omit the first sentence of paragraph 63, which is neither admitted by Colt nor supported by the record citations given.

[83] As Bushmaster point out, *see* SMF Objections ¶ 64, Colt's purported qualification of this statement merely restates it, *see* Plaintiff's Opposing SMF ¶ 64.

[84] Bushmaster's objection to Colt's qualification of this statement, *see* Plaintiff's Opposing SMF ¶ 11; SMF Objections ¶ 11, is sustained on the basis of lack of evidence that Bartocci or Maynard has personal knowledge of the reasons why Bushmaster's customers refer to certain weapons in certain ways.

advertising or in connection with the sale of its products.  *Id*. ¶ 24.  Bushmaster has not used the term

"COMMANDO" in its advertising since 1999.  *Id*. ¶ 25.

The term M16 is not a registered mark in the United States.  *Id*. ¶ 80.  The term AR-15 has

been in use since the 1950s.  *Id*. ¶ 81. Bushmaster has never used the terms Colt AR-15 or Colt AR-15

and Design in its advertising.  *Id*. ¶ 83.[85]  Bushmaster used the term "COMMANDO" in its advertising

from the mid-1980s until about 1999.  *Id*. ¶ 84.[86]

### Colt's Efforts To Protect Its Marks

On December 3, 1984 Colt's attorneys wrote a letter to Bushmaster complaining about a quote

that Bushmaster had submitted to supply the government of Thailand with M16A1 barrels.  *Id*.¶66. In

that letter, Colt asserted that it had a protectable trademark interest in the term M16 and that

Bushmaster's use of the terms M16 and M16A1 constituted trademark infringement and false

designation of origin under the Lanham Act.  *Id*. ¶ 67.  Bushmaster continued to use the term M16 in its

advertising, and Colt did not take any legal action to prevent Bushmaster from using the term M16 until

it commenced this action in April 2004.  *Id*. ¶ 68.[87]

In November 1990 Colt's attorneys wrote a letter to Bushmaster complaining about

Bushmaster's use of the term XM15, which Colt contended was confusingly similar to its trademarks,

including its AR-15 mark.  *Id*. ¶ 69.[88]  Colt's attorney also claimed that Bushmaster's activities

constituted "patent, trademark, and trade dress infringement, as well as an attempt to intentionally and

willfully imitate [Colt's] goods and trademarks to deceive the public and misrepresent the source of

---

[85] Colt qualifies this statement, asserting that Bushmaster has used the term AR-15 in its advertising.  *See* Plaintiff's Opposing SMF ¶ 83; Chen Decl. ¶ 11.  Bushmaster's objection to this qualification on the ground that it is nonresponsive, *see* SMF Objections ¶ 83, is overruled.

[86] The parties dispute whether this usage was only occasional or more than occasional.  *Compare* Defendant's SMF ¶ 84; DeSantis Decl. ¶ 11 *with* Plaintiff's Opposing SMF ¶ 84; Chen Decl. ¶ 12; *see also* SMF Objections ¶ 84; Response to SMF Objections ¶ 84.

[87] Bushmaster's objection to Colt's qualification of this statement, *see* Plaintiff's Opposing SMF ¶ 68; SMF Objections ¶ 68, is sustained on the basis that Colt fails to provide a proper record citation in support thereof.

[88] My recitation includes Colt's qualification, *see* Plaintiff's Opposing SMF ¶ 69, to which Bushmaster lodges no objection, *see* SMF (*continued on next page*)

Bushmaster's goods." *Id*. Colt's attorney demanded that Bushmaster "immediately cease and desist all patent and trademark infringements, and unfair competition activities." *Id*. Bushmaster's attorneys responded by letter dated December 10, 1990. *Id*. ¶ 70. In that letter, they stated that they did not believe that the term XM15 was confusingly similar to the term AR-15 and, thus, there was no infringement. *Id*. Bushmaster's attorneys also pointed out that Colt had failed to specifically identify any other registrations or common-law trademarks or trade-dress rights (other than in the AR-15 mark) that Bushmaster allegedly infringed. *Id*. Bushmaster's attorneys requested that Colt specifically identify the other trademarks or trade dress that Bushmaster supposedly infringed so that Bushmaster could work with Colt to address Colt's concerns. *Id*. Colt never responded to Bushmaster's request. *Id*.

In January 1991 Bushmaster Chief Executive Officer Richard Dyke met with Patrick M. Squire, vice-president and general counsel for Colt, at the 1991 Shot Show, an annual convention of firearms manufacturers, dealers and distributors that is open to the public. Defendant's SMF ¶ 71; Affidavit of Richard Dyke ("Dyke Aff.") (Docket No. 43) ¶ 18. During this conversation, Squire referred to the 1990 letter from Colt's attorneys and Bushmaster's letter in response. *Id*.[89]

In December 1994 Colt's attorneys wrote another letter to Bushmaster in which they complained that Bushmaster was falsely advertising that it had completed a military contract for "M16A2 M4 carbines." Defendant's SMF ¶ 72; Plaintiff's Opposing SMF ¶ 72.[90] In the letter, Colt's attorneys pointed out that the proper "U.S. military designation for the carbine is "M4," not "M16A2

---

Objections ¶ 69.

[89] As Bushmaster recognizes, *see* SMF Objections ¶ 71, Colt effectively denies the remainder of paragraph 71, *see* Plaintiff's Opposing SMF ¶ 71; Declaration of Patrick M. Squire ("Squire Decl."), Attachment No. 22 to Plaintiff's Opposing SMF, ¶¶ 6-9. Inasmuch as I must view the cognizable evidence in the light most favorable to Colt as nonmovant, I omit that portion of Bushmaster's underlying statement.

[90] Colt adduces evidence of the types of false advertising in which it alleges Bushmaster has engaged. *See* Plaintiff's Additional SMF ¶¶ 68-73. Inasmuch as those details are not necessary to resolution of the instant motion, I omit them.

M4." *Id*.  Bushmaster responded by letter dated December 19, 1994 and submitted proof that it had

completed a contract in 1990 to provide the Army with sixty-five M4-type carbines.  *Id*. ¶ 73.[91]

In 1997 Carlton Chen, general counsel for Colt, wrote a letter to Bushmaster complaining

about a letter that Bushmaster had sent to Hellenic Arms Industry.  *Id*. ¶ 74.[92]  Chen asserted that

Bushmaster had allegedly made "several disparaging and defamatory statements concerning" Colt.  *Id.*

Chen did not make any claims that Bushmaster was infringing upon Colt's trademarks or trade dress

or making any allegedly false statements in its advertising.  *Id*.[93]

Bushmaster responded to the 1997 letter, pointing out that it had been manufacturing firearms

for twenty-one years and had enjoyed a cordial relationship with Chen's predecessor.  Defendant's

SMF ¶ 75; Exh. 10 to Dyke Aff.  Bushmaster encouraged Chen to review Colt's files concerning

Bushmaster and reaffirmed that Bushmaster did not encroach on anyone else's intellectual property

rights.  *Id*.  Colt did not respond to Bushmaster's 1997 letter.  Defendant's SMF ¶ 75; Dyke Aff. ¶ 24.

Bushmaster understood the lack of any response from Colt to mean that Chen had been convinced that

Bushmaster was not encroaching upon Colt's intellectual property rights.  *Id*.[94]

In March 1999 Chen wrote another letter in which he asserted that Bushmaster was improperly

using Colt's trademarks and making certain representations in its advertising that Colt contended were

false.  Defendant's SMF ¶ 76; Plaintiff's Opposing SMF ¶ 76.  In response, Bushmaster pointed out

that it was as concerned as Colt with ensuring that Bushmaster's products were not confused with

those of Colt.  *Id*. ¶ 77.  Bushmaster also indicated that it did not appreciate receiving letters from Colt

---

[91] Colt qualifies this statement, asserting that the carbines provided to the Army Aberdeen Proving Ground Support Activity in 1990 were designated [**REDACTED**].  Plaintiff's Opposing SMF ¶ 73; Exh. 8 to Dyke Aff.

[92] My recitation includes the second sentence of Colt's qualification, *see* Plaintiff's Opposing SMF ¶ 74, which Bushmaster does not contest, *see* SMF Objections ¶ 74.

[93] Colt qualifies this statement, asserting that Chen's letter stated that "we are currently reviewing all potential actions which may be necessary to protect Colt's rights and its reputation."  Plaintiff's Opposing SMF ¶ 74; Exh. 9 to Dyke Aff.  Bushmaster's objection to this portion of Colt's qualification on the ground that it is nonresponsive, *see* SMF Objections ¶ 74, is overruled.

[94] I sustain Bushmaster's objection to Colt's denial of paragraph 75, *see* Plaintiff's Opposing SMF ¶ 75; SMF Objections ¶ 75, on the (*continued on next page*)

every few years containing unsubstantiated claims regarding Colt's alleged intellectual property rights. *Id*. Bushmaster agreed to meet with representatives from Colt to resolve any differences that Colt and Bushmaster had regarding the use of certain names and terms. *Id*.

After sending the March 1999 response to Chen, Bushmaster received a telephone call from Steven Sliwa, then Colt's chief executive officer, inviting Bushmaster to meet with him to discuss a possible merger between Bushmaster and Colt. Defendant's SMF ¶ 78; Dyke Aff. ¶ 27.[95]  During the ensuing meeting in April 1999, Bushmaster told Sliwa that it was not prepared to discuss any potential merger between the companies until it received his assurances that Colt was not going to pursue any trademark infringement or false advertising claims against Bushmaster. Defendant's SMF ¶ 79; Dyke Aff. ¶ 28.[96]

[**REDACTED**].  Defendant's SMF ¶ 85; Plaintiff's Opposing SMF ¶ 85.[97]  Colt attempts to pick up a brochure from every competitor at every gun show. *Id*. In connection with the foregoing efforts, Colt found and retained Bushmaster advertisements from 1994, 1996 and 1997. *Id*. ¶ 86. Colt admits that at least as early as 1996, it was aware of Bushmaster's use of the Terms. Defendant's SMF ¶ 87; Colt Defense LLC's Responses to Bushmaster Firearms, Inc's First Set of Interrogatories ("Colt's Interrog. Responses"), Exh. H to Defendant's SMF, ¶ 7[98]; *see also* Plaintiff's Additional SMF ¶ 120; Defendant's Reply SMF ¶ 120.

---

[95] I sustain Bushmaster's objection to Colt's denial of this assertion, *see* Plaintiff's Opposing SMF ¶ 78; SMF Objections ¶ 78, on the basis that Chen's statements on which Colt relies were based on third-party reports and therefore constitute inadmissible hearsay, *see* Colt Dep./Plaintiff at 338-41.

[96] I omit the balance of paragraph 79, which Colt successfully denies. *Compare* Defendant's SMF ¶ 79 *with* Plaintiff's Opposing SMF ¶ 79; Declaration of Steven Sliwa ("Sliwa Decl."), Attachment No. 21 to Plaintiff's Opposing SMF, ¶¶ 3-5. Bushmaster's objection to Colt's denial, *see* SMF Objections ¶ 79, is overruled. Sliwa's averment that he does not recall having made the statements Bushmaster attributed to him is sufficient to contest Bushmaster's assertion that he made such statements.

[97] Colt adds that these efforts are "significant," Plaintiff's Additional SMF ¶ 74; however, the characterization is not supported by the deposition testimony it cites, *see* Reissig Dep., Exh. J to Plaintiff's Opposing SMF ("Reissig Dep./Plaintiff"), at 62-64.

[98] Bushmaster's objection to Colt's qualification of this statement, *see* SMF Objections ¶ 87, is sustained on the basis that it is not supported by the citation given, *see* Plaintiff's Opposing SMF ¶ 87; Colt's Interrog. Responses ¶ 7.

Colt's efforts have included filing a lawsuit against (i) American Western Arms for its use of the Single Action Army name, (ii) the same company in 2000 for trade-dress infringement, and (iii) U.S. Firearms Manufacturing Company in 2004 for trademark infringement and other claims. Plaintiff's Additional SMF ¶ 75; Defendant's Reply SMF ¶ 75. Colt has brought a number of opposition proceedings concerning trademark infringement, including proceedings against the City of London Telecommunications, Major League Baseball and others. *Id*. ¶ 76.[99] Colt routinely collects the marketing materials of other gun manufacturers and sellers to monitor their activities. *Id*. ¶ 77. Colt has sent many "cease and desist" letters over the years. Plaintiff's Additional SMF ¶ 78; Colt Dep./Plaintiff at 115, 150-55. Many of these efforts have addressed improper use of its M4 trademark. Plaintiff's Additional SMF ¶ 78; Chen Decl. ¶ 45.[100]

Prior to 2003, Colt did not include the term M4 on its internet list of registered and unregistered marks in which it claimed a protectable trademark interest. Defendant's SMF ¶ 100; Plaintiff's Opposing SMF ¶ 100.[101] Although Colt's web site in earlier years did not specifically list its M4 mark as a mark of Colt, the legal notice on the web site informed visitors to the site that the company's marks were not limited to those listed at the site. Plaintiff's Additional SMF ¶ 82; Defendant's Reply SMF ¶ 82. Colt did not seek registration of the term M4 until November 2001. Defendant's SMF ¶ 101; Exh. 17 to Drury Decl.[102] Colt is the current record owner of Federal

---

[99] Bushmaster's objections to paragraphs 75 and 76 on relevance grounds, *see* Defendant's Reply SMF ¶¶ 75-76, are overruled.

[100] Bushmaster's objection to paragraph 78 on the ground that "many" is vague, *see* Defendant's Reply SMF ¶ 78, is overruled. Bushmaster alternatively disagrees that Colt has sent "many" such letters, *see id*.; however, I view the cognizable evidence in the light most favorable to Colt as nonmovant.

[101] Colt qualifies this statement, asserting that its 2002 list recited "Colt M4" among protectable trademarks and that its internet list stated that it did not purport to be an exhaustive list of all the marks in which it owned intellectual property. *See* Plaintiff's Opposing SMF ¶ 100; Colt Dep. Exh. 58, attached to Colt Dep./Plaintiff. Bushmaster's objection to this qualification on the ground that it is nonresponsive, *see* SMF Objections ¶ 100, is overruled.

[102] I sustain Bushmaster's objection to Colt's denial of this statement, *see* Plaintiff's Opposing SMF ¶ 101; SMF Objections ¶ 101, on the basis of lack of a record citation. In response to Bushmaster's objection, Colt belatedly proffers a citation and supporting document, *see* Response to SMF Objections at 8, ¶ 101 & Exh. 1 thereto. However, the opportunity afforded by Local Rule 56 to respond to objections does not afford a chance to tender evidence or citations omitted (whether inadvertently or not) from a statement (*continued on next page*)

Trademark Registration No. 2,734,001, issued on July 8, 2003. Plaintiff's Additional SMF ¶ 36; Defendant's Reply SMF ¶ 36.[103] The U.S. Patent and Trademark Office ("PTO") initially refused registration, finding that the term M4 was generic. Defendant's SMF ¶ 102; Plaintiff's Opposing SMF ¶ 102.[104] Colt responded to the initial refusal, arguing, among other things, that the term had acquired secondary meaning. Defendant's SMF ¶ 103; Exh. 17 to Drury Decl. Colt's general counsel signed an affidavit stating that its use of the term M4 was "substantially exclusive and continuous . . . for at least the five years immediately prior to [November 15, 2002]," *id.*, [**REDACTED**], Defendant's SMF ¶ 103; Reissig Dep. at 55-57.[105]

Accepting Colt's representations, the PTO allowed federal registration for the term M4 to issue under section 2(f) of the Lanham Act, which means that the term M4 was determined to be merely descriptive, but with acquired secondary meaning. Defendant's SMF ¶ 104; Plaintiff's Opposing SMF ¶ 104.[106] The registration certificate for the M4 mark indicates that the category of goods covered by the M4 mark is limited to "Firearms, Namely Rifles and Spare Parts and Replacement Parts for Rifles." *Id.*[107]

The recent flurry of enforcement actions by Colt was spurred by [**REDACTED**]. Plaintiff's Additional SMF ¶ 79; Defendant's Reply SMF ¶ 79. As Colt's general counsel, Carlton Chen,

---

of material facts. In any event, Colt provides no citation to authority or developed argument in support of its proposition that the belatedly tendered document is "self-authenticating." *See* Response to SMF Objections at 8, ¶ 101 & Exh. 1 thereto.

[103] I sustain Bushmaster's objection to the second sentence of paragraph 36, *see* Plaintiff's Additional SMF ¶ 36; Defendant's Reply SMF ¶ 36, on the basis that it states a legal conclusion.

[104] Colt qualifies this statement, asserting that the PTO initially refused registration based on a finding that the mark was descriptive. *See* Plaintiff's Opposing SMF ¶ 102; Chen Decl. ¶ 17. The Office Action stated that "the proposed mark *appears* to be generic as applied to the goods" (emphasis added), but this statement did not rise to the level of a finding and/or basis for rejection. *Id.*

[105] Bushmaster's objection to Colt's denial, *see* Plaintiff's Opposing SMF ¶ 103; SMF Objections ¶ 103, is sustained on the basis that it is nonresponsive – that is, it does not controvert the underlying statement.

[106] I sustain Bushmaster's objection to Colt's qualification of this paragraph, *see* Plaintiff's Opposing SMF ¶ 104; SMF Objections ¶ 104, on the ground that it asserts a legal conclusion.

[107] Colt adds: "The M4® trademark is distinctive: it has acquired secondary meaning in the marketplace as proven by its registration under section 2(f)." Plaintiff's Additional SMF ¶ 111. However, I sustain Bushmaster's objection to this paragraph, *see* Defendant's Reply SMF ¶ 111, on the ground that it states a legal conclusion.

explained: [**REDACTED**].  *Id*.[108]  Colt saw some attempts by Bushmaster [**REDACTED**].  Plaintiff's

Additional SMF ¶ 80; Colt Dep./Plaintiff at 340-45.[109]  Colt and Heckler & Koch recently reached a

settlement.  Plaintiff's Additional SMF ¶ 117; Defendant's Reply SMF ¶ 117.[110]

## III.  Analysis

In the six counts of its complaint relevant to Bushmaster, Colt alleges that Bushmaster

(i) infringed its registered trademarks, in particular its M4 mark, in violation of 15 U.S.C. § 1114

(Count I), Complaint ¶¶ 51-65, (ii) engaged in false designation of origin in violation of 15 U.S.C.

§ 1125(a) by virtue of its unauthorized use of the M4 name and mark and other Colt names and marks

(Count III), *id*. ¶¶ 81-86, (iii) misappropriated Colt's trade dress for the M4 in violation of 15 U.S.C.

§ 1125(a) (Count V), *id*. ¶¶ 93-97, (iv) engaged in false advertising, in violation of 15 U.S.C. §

1125(a) by virtue, *inter alia*, of its unauthorized use of the M4 name and other Colt registered and

common-law marks (Count VII), *id*. ¶¶ 103-11, (v) engaged in common-law trademark infringement

and unfair competition by virtue of its unauthorized use of Colt's marks and trade dress and its

advertising conveying that its products are sponsored or otherwise approved by the U.S. government

or the U.S. Armed Services (Count IX), *id*. ¶¶ 121-29, and (vi) diluted the value of Colt's famous M4

mark, in violation of 15 U.S.C. § 1125(c) (Count XI), *id*. ¶¶ 139-46.  Five of these counts (all but

Count IX) state claims pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*.  *See, e.g., Zyla v.*

*Wadsworth*, 360 F.3d 243, 251 (1st Cir. 2004) ("While much of the Lanham Act addresses the

---

[108] Bushmaster's objection to paragraph 79 on the basis that it is conclusory and without foundation and that the word "clones" is argumentative, *see* Defendant's Reply SMF ¶ 79, is overruled.

[109] Bushmaster's hearsay objection, *see* Defendant's Reply SMF ¶ 80, is overruled with respect to that portion of paragraph 80 set forth in my recitation, which I am satisfied is based on Chen's own perceptions, and otherwise sustained, *see* Plaintiff's Additional SMF ¶ 80.  Bushmaster alternatively denies the statement, *see* Defendant's Reply SMF ¶ 80; however, I view the cognizable evidence in the light most favorable to Colt as nonmovant.  Bushmaster's objection to paragraph 81 on the bases, *inter alia*, that it is vague and sets forth a legal conclusion, see Defendant's S/J Reply ¶ 81, is sustained.  Colt does not clarify how Bushmaster became [**REDACTED**] in its advertising or which "violations" began reoccurring.  *See* Plaintiff's Additional SMF ¶ 81.

[110] I sustain Bushmaster's objection to the balance of this statement, *see* Plaintiff's Additional SMF ¶ 117; Defendant's Reply SMF ¶ 117, on the ground that the contents of the Heckler & Koch settlement agreement are irrelevant to resolution of the instant claims.

registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a)[,] is one of the few provisions that goes beyond trademark protection.") (citation and internal quotation marks omitted); *see also, e.g., Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 59 n.2 (1st Cir. 2000) (Lanham Act forbids false designations of origin, false descriptions and dilution).

Bushmaster seeks summary judgment on seven bases, arguing that:

1.      Its use of the term M4 predates that of Colt, entitling it to summary judgment with respect to Colt's claims of trademark infringement, dilution and false designation of origin relating to the term M4 and to summary judgment with respect to its own counterclaim for cancellation of Colt's federal registration for the M4 mark.  *See* Defendant's S/J Motion at 7-9.

2.      The term M4 is a generic designation for a type of firearm, entitling Bushmaster to summary judgment with respect to Colt's claims of trademark infringement, false designation of origin and dilution relating to the term M4 and to summary judgment with respect to its own counterclaim for cancellation of Colt's federal registration for the M4 mark.  *See id*. at 9-15.

3.      Its use of the Terms constitutes a protected "fair use," entitling it to summary judgment with respect to Colt's claims of trademark infringement, dilution and false designation of origin relating to the Terms.  *See id*. at 15-18.

4.      There is no likelihood of confusion among a commercially relevant group of consumers as to the source of Bushmaster's products, entitling Bushmaster to summary judgment with respect to Colt's claims of trademark infringement and false designation of origin as well as its claims of common-law trademark infringement and unfair competition (the latter two contained in Count IX of the Complaint) regarding the Terms.  *See id*. at 18-29 & n.8.

5.      The product design of Colt's M4 carbine has not acquired secondary meaning, every element of its design is functional, and there is no likelihood of confusion, entitling Bushmaster to summary judgment with respect to Colt's claim of trade-dress infringement.  *See id*. at 29-38.

6.      Colt slept on its rights, entitling Bushmaster to summary judgment with respect to all claims against it on the ground of laches.  *See id*. at 39-48.[111]

7.      Colt cannot recover damages for its Lanham Act claims because it is undisputed that Colt does not have any evidence of actual consumer confusion.  *See id*. at 48-49.

For the reasons that follow, I conclude that on the basis of its second, fourth and fifth points, Bushmaster is entitled to summary judgment with respect to Counts I, III, V, IX and XI of the Complaint and Count I of its Counterclaim, as well as that portion of Count VII of the Complaint alleging false advertising on the basis of Bushmaster's use of the term M4.  I reach Bushmaster's sixth point only for purposes of addressing the remaining false-advertising claims contained within Count VII, concluding that Bushmaster fails to demonstrate its entitlement to summary judgment with respect to those claims on the basis of laches.  Finally, I agree with Bushmaster that, with respect to Colt's Lanham Act claims that I have recommended survive summary judgment, damages are unavailable.  I need not, and do not, reach Bushmaster's first and third points, which are not aimed at Colt's false-advertising claims.

## A.  M4 as Generic Term

As the First Circuit has observed, "[t]rademark law seeks to prevent one seller from using the same 'mark' as – or one similar to – that used by another in such a way that he confuses the public

---

[111] Bushmaster inconsistently describes this point as pertaining solely to Colt's Lanham Act claims, *see* Defendant's S/J Motion at 39, and also to all of counts asserted against it, *see id*. at 40, 48.  Colt apparently construes it as applying to all claims.  *See* Plaintiff Colt Defense LLC's Memorandum in Opposition to Defendant Bushmaster Firearms, Inc.'s Motion for Summary Judgment ("Plaintiff's S/J Opposition") (Docket No. 57) at 36.  Inasmuch as I address this point only in the context of Lanham Act claims, I need not resolve whether it applies as well to Colt's state-law claims.

about who really produced the goods (or service)." *Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir. 1995) (citations and internal quotation marks omitted). A prerequisite for trademark or trade-dress protection is distinctiveness. *See, e.g., I.P. Lund*, 163 F.3d at 39 ("In order to receive trade dress protection, a product must either be inherently distinctive or have acquired secondary meaning."). In turn, "[i]n analyzing whether a product's mark is distinctive, courts have often divided marks into the five categories set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Id.* "Suggestive, arbitrary, and fanciful marks are deemed inherently distinctive; descriptive marks receive protection only upon a showing that they have acquired secondary meaning; and generic marks are not protectable." *Id.*; *see also, e.g., Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 19 (1st Cir. 2004) ("Strong and distinctive trademarks, such as fanciful words (e.g., "Clorox") and words used in arbitrary ways (e.g., "Apple Computers"), receive greater protection than weak, generic marks (e.g., "bleach")").

"A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Equitechnology*, 68 F.3d at 544 (citations and internal quotation marks omitted). It is "descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Id.* (citations and internal quotation marks omitted). Merely descriptive terms, which "are often necessary to the description of all goods or services of a similar nature[,]" are "a poor means of distinguishing one source of services from another[.]" *Id.* (citation and internal quotation marks omitted). Hence, they are not protectable absent a showing of "secondary meaning" – the acquisition of "a special association with a particular source of consumer products or services." *Flynn*, 377 F.3d at 19; *see also, e.g.*, 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:8 (4th ed. 2005) ("McCarthy") ("All that is necessary to establish a secondary

40

meaning is that the ordinary buyer associates the mark with a single, albeit anonymous, source. The buyer need not know the corporate or personal name of the source. When the buyer sees any related product with that mark, he is entitled to assume that it comes from the same anonymous source as every other related product so marked.") (footnotes omitted).

Generic terms reside at the bottom end of the spectrum: By definition, they can never function as trademarks to identify and distinguish the products of only one seller because they describe not the source of the product but the thing itself. *See, e.g.*, *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir. 1986) ("A generic term is one that is commonly used as the name of a kind of goods. Unlike a trademark, which identifies the source of a product, a generic term merely identifies the genus of which the particular product is a species.") (citations omitted); McCarthy § 12:1 ("The name of a product or service itself – what it is – is the very antithesis of a mark. In short, a generic name of a product can never function as a trademark to indicate origin. The terms 'generic' and 'trademark' are mutually exclusive.") (footnotes omitted).[112]

A mark's classification differs depending on the nature of the product: "For example, the word 'apple' would be arbitrary when used on personal computers, suggestive when used in 'Apple-A-Day' on vitamin tablets, descriptive when used in 'Tomapple' for combination tomato-apple juice and generic when used on apples." *Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220, 225 (S.D.N.Y. 1996) (citation and internal quotation marks omitted).

Even a mark once considered distinctive enough to function as a trademark – for example, "Thermos" and "Pilates" – can become generic through public usage, causing it to become a victim of "genericide." *See, e.g.,* McCarthy § 12:1 ("If the public chooses to call a product a 'Thermos' bottle

---

[112] As McCarthy further helpfully elaborates: "A mark answers the buyer's questions 'Who are you? Where do you come from?' 'Who vouches for you?' But the name of the product answers the question 'What are you?' Many competitive products will give the same answer, regardless of source of origin – e.g., a personal computer, a type of restaurant, a bar of soap. Such generic designations (*continued on next page*)

rather than a 'THERMOS brand vacuum-insulated bottle,' then 'Thermos' is not serving as a mark – it is used as a generic name, regardless of the producer's intentions. . . .   [I]f one seller develops trademark rights in a term which a majority of the relevant public then appropriates as the name of a product, the mark is a victim of 'genericide' and trademark rights may cease."); *see also, e.g.*, *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp.2d 286, 304 (S.D.N.Y. 2000) ("The evidence described above shows that PILATES is understood by the public to refer to either the Pilates method (as in "I do Pilates") or to products or services used in connection with the Pilates method (as in "Pilates equipment" or "Pilates instruction").  In both uses of the word, the primary significance of PILATES is as a method of exercise, not as a source of a product or service.").  Sometimes "genericide" occurs "as a result of a trademark owner's failure to police the mark, resulting in widespread usage by competitors leading to a perception of genericness among the public, who see many sellers using the same term."  McCarthy § 12:1 (footnotes omitted).  Alternatively, "[s]ometimes, a term intended by the seller to be a trademark for a new product is taken by the public as a generic name because customers have no other word to use to name this new thing."  *Id*.

The mark in question, M4, is a federally registered trademark, entitling it to a presumption of validity (including the requisite distinctiveness).  *See Equitechnology*, 68 F.3d at 544-45; *see also, e.g., Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 542 (4th Cir. 2004) ("Because the PTO may not register a generic mark, the fact that a mark is registered is strong evidence that the mark satisfies the statutory requirements for the distinctiveness necessary for trademark protection.").  When Colt applied for registration for the term M4, the PTO questioned whether the mark was generic but initially refused registration on the ground that it was merely descriptive.  After Colt made a showing of secondary meaning, the mark was registered.

---

tell the buyer what the product is, not where it came from."  McCarthy §  12:1 (footnote omitted).

Nonetheless, the presumption of validity that attaches to a registered mark may be overcome if a challenger proves, by a preponderance of the evidence, that a mark has become generic. *See, e.g., id.* at 542-43 (federal trademark registration "has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is generic by a preponderance of evidence"; however, once that showing is made, the presumption "is 'neutralized' and essentially drops from the case"); *America Online, Inc. v. AT&T Corp.,* 243 F.3d 812, 817 (4th Cir. 2001) ("Congress plainly stated the limited deference that a certificate of registration provides: it must be received into evidence but then only serves as 'prima facie evidence of the validity of the registered mark.'") (citation omitted).

To make the required showing, the challenger "must (1) identify the class of product or service to which use of the mark is relevant; (2) identify the relevant purchasing public of the class of product or service; and (3) prove that the primary significance of the mark to the relevant public is to identify the class of product or service to which the mark relates." *Glover v. Ampak, Inc*., 74 F.3d 57, 59 (4th Cir. 1996). Evidence of the significance of the mark to the relevant public "may come from purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications." *Id*. Also relevant are "generic use of the term by competitors and other persons in the trade; . . . [the trademark proponent's] own generic use; . . . generic use in the media" and "whether there are commonly used alternative means to describe the product or service." *Pilates*, 120 F. Supp.2d at 297.

As Bushmaster suggests, *see* Defendant's S/J Motion at 15, to the extent a challenger is able to meet its burden of proving a mark has become generic (and its registration thus should be cancelled), it follows that claims of trademark infringement, dilution and false designation of origin arising from the challenger's use of the mark must fail, *see, e.g., Miller Brewing Co. v. Falstaff Brewing Corp*., 655

F.2d 5, 7 (1st Cir. 1981) ("Under no circumstances is a generic term susceptible of de jure protection under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)[,] or under the law of unfair competition.") (footnote omitted).

As Bushmaster points out, the cognizable evidence supports a finding that the class of products to which the mark is relevant is firearms and firearms parts, and the relevant classes of purchasers are civilian firearms purchasers, law-enforcement officers, local, state and federal government agencies and foreign governments and agencies. *See* Defendant's S/J Motion at 11 & n.4. I turn to the question whether, with respect to this class of products and these purchasers, there is a triable issue whether the primary significance of the term M4 is as a product rather than source identifier:

1.    <u>Consumer Surveys; Purchaser Testimony</u>. As Colt points out, Bushmaster does not adduce either of these types of evidence in its quest to prove the term M4 generic. *See* Plaintiff's S/J Opposition at 19. However, the absence of such evidence is not necessarily fatal. *See, e.g., In re Merrill Lynch, Pierce, Fenner, & Smith, Inc*., 828 F.2d 1567, 1570 (Fed. Cir. 1987) ("Evidence of the public's understanding of the term may be obtained form any competent source[.]").

In any event, as Bushmaster points out in its reply memorandum, Colt ironically introduced powerful evidence of consumers' generic usage of the term M4 in paragraphs 87-100 of the Plaintiff's Additional SMF, which were intended to portray confusion in the marketplace. *See* Defendant Bushmaster Firearms, Inc.'s Reply in Support of Its Motion for Summary Judgment ("Defendant's S/J Reply") (Docket No. 64) at 7; Plaintiff's Additional SMF ¶¶ 87-100. Tellingly, every single one of the potential customers whose correspondence with Bushmaster is excerpted – among them civilians, law-enforcement officers, a federal agency (the U.S. Marshals Service) and a customer wanting [**REDACTED**] – used the term M4 as a generic descriptor for a type of firearm. *See* Plaintiff's Additional SMF ¶¶ 87 (has [**REDACTED**]), 88 (has [**REDACTED**]), 89 (wanting Bushmaster to

[**REDACTED**]), 90 (requesting [**REDACTED**]), 91 (seeking [**REDACTED**]), 92 (requesting information for [**REDACTED**]), 93 (seeking [**REDACTED**]), 94 (asking questions about [**REDACTED**]), 95 (seeking information about [**REDACTED**]), 96 (seeking information about [**REDACTED**]), 97 (wanting to know what was needed [**REDACTED**]), 98 (confirming purchase of [**REDACTED**]), 99 (seeking pricing [**REDACTED**]), 100 (wanting to [**REDACTED**]).  These usages are analogous to customers' usages of the term "Thermos" as a descriptor for a vacuum-insulated bottle, as in, "Hand me the Thermos" or "Did you pack a Thermos bottle?"

The parties dispute whether the U.S. military, which coined the term M4 ("Model" 4), itself considers the term a generic identifier of a particular type of firearm versus an identifier of the manufacturer with whom it has a sole-source contract for the supply of M4 carbines – Colt.  Colt points out that (i) the M4 Addendum [**REDACTED**], (ii) specification MIL-C-70559, in turn, incorporates Colt's proprietary TDP (technical data package), and (iii) pursuant to the M4 Addendum, only Colt can manufacture M4 carbines except in very limited circumstances, using Colt's TDP, and subject to a royalty payment to Colt.  *See* Plaintiff's S/J Opposition at 18-19.  Therefore, Colt posits, the U.S. government considers the term to refer to the specific carbine manufactured and sold exclusively by Colt.  *See id.* at 18.  For purposes of the instant motion, with respect to which I must give Colt as nonmovant the benefit of all reasonable inferences in its favor, I will assume this to be the case.[113]

2.    Trade Journals; Other Publications.  Bushmaster further introduces evidence – which Colt does not successfully refute  –  that articles have appeared in Soldier of Fortune, Special

---

[113] Colt's arguments that it is "obvious" that the generic term for the carbine it manufactures is carbine, rifle, firearm, gun or weapon, not M4, and that the M4 mark on its face is suggestive or otherwise inherently distinctive, *see* Plaintiff's S/J Opposition at 16-17, miss the mark.  The PTO itself did not find Colt's mark M4 suggestive or inherently distinctive; rather, it required proof of secondary meaning.  Further, as is obvious from the foregoing discussion, a term is not viewed in a vacuum but rather by the light of how it is perceived by the relevant purchasing public.

Weapons, and Guns & Weapons for Law Enforcement in which the term M4 is used to describe military-style carbines other than those of Colt, and that in a 2004 edition of Shot Gun News numerous firearms manufacturers used the term M4 to describe their products. *See* Defendant's SMF ¶¶ 95-96; Plaintiff's Opposing SMF ¶¶ 95-96.  As the *Pilates* court noted, "Newspaper and magazine use of a term in a generic sense is strong evidence of genericness."  *Pilates*, 120 F. Supp.2d at 300.

        3.      <u>Usage by Competitors (Third-Party Usage)</u>.  It is undisputed that numerous firearms manufacturers other than Colt have used the term M4 for years to refer to military-style carbines with collapsible buttstocks and shortened barrels.  *See* Defendant's SMF ¶ 92; Plaintiff's Opposing SMF ¶ 92.  In addition to Bushmaster, at least fifteen other manufacturers use or have used the term M4 in their advertising.  *See id*.  Many manufacturers of airguns and paintball guns also use the term M4 to describe their products, although some do so via licensed use of Colt's mark and Colt has successfully terminated unlicensed use of the mark by others.  *See id*. ¶ 97.  As Colt points out, "[M]erely introducing a list of third party uses alone is not particularly persuasive[.]"  Plaintiff's S/J Opposition at 20 (quoting McCarthy § 11:88).  However, this factor lends some additional heft, however slight, to the overall showing that the primary significance of the term M4 to the relevant public is as an identifier of a type of firearm, not a single source of a firearm.

        4.      <u>Usage by Colt</u>.  Bushmaster adduces evidence that Colt itself has used the term M4 as a noun to describe its products – for example, advertising the sale of an M16A2 M4, a Commando M4, a Match Target M4 and an LE M4.  *See* Defendant's SMF ¶ 98; Plaintiff's Opposing SMF ¶ 98. A patent issued to one Vincent Battaglia uses the term M4 as a generic designation for a particular type of military-style firearm, referring for example to "the M4 type rifles and carbines (the current descendents of the original M16 type rifle)."  *Id*. ¶ 105.  As Bushmaster points out, "[I]f the proponent of trademark status itself uses the term as a generic name, this is strong evidence of genericness."

Defendant's S/J Motion at 11 (quoting McCarthy § 12:13); *see also, e.g., Birtcher Electro Med. Sys., Inc. v. Beacon Labs., Inc.,* 738 F. Supp. 417, 420 (D. Colo. 1990) (trademark proponent's use of term "Argon Beam Coagulator" as a noun naming a kind of surgical instrument, *e.g.*, "Bard ABC Argon Beam Coagulator," found to be strong evidence of genericness); *Pilates,* 120 F. Supp.2d at 299 (trademark-infringement plaintiff's "own generic use of its marks supports a finding of genericness").

While Colt has sent many "cease and desist" letters over the years, many of which addressed improper use of the M4 trademark, *see* Plaintiff's Additional SMF ¶ 78; Defendant's Reply SMF ¶ 78, [**REDACTED**], *see* Defendant's SMF ¶ 93; Plaintiff's Opposing SMF ¶ 93. Colt did not apply to register the mark before 2001, *see* Defendant's SMF ¶ 101; Plaintiff's Opposing SMF ¶ 101, and before 2003 it did not even highlight the mark in a list of registered and unregistered marks on its web site in which it claimed a protectable trademark interest, *see id.* ¶ 100.

Stepping back from this plethora of details, it is apparent that there is no triable issue whether, in the eyes of the relevant public, the primary significance of the term M4 is as a product rather than source identifier: The totality of the cognizable evidence indicates that, with the possible exception of the U.S. military, purchasers of firearms and firearms parts view the term M4 as a generic term for a type of firearm, not as an identifier of a sole source for such firearms (whether that sole source is Colt or "anonymous"). This is understandable, for it is undisputed that more than a dozen firearms manufacturers other than Colt have used the term M4 for years to refer to military-style carbines with collapsible buttstocks and shortened barrels. Bushmaster itself has done so since 1991. Tellingly, Colt, which has been slow to police its claimed rights in the mark aggressively, has itself used the term M4 in a generic fashion.

While, as explained above, for purposes of summary judgment I have credited Colt's assertion that the U.S. military identifies the term M4 with a sole source (Colt), little turns on this fact: By

contractual arrangement, Colt is indeed the U.S. military's sole-source supplier of the M4 carbine. As among classes of purchasers who are free to choose among the products of competing manufacturers, the evidence that the term M4 is understood to represent a type rather than a sole source of firearm is uncontroverted.

For these reasons, Bushmaster has demonstrated its entitlement to summary judgment with respect to (i) Counts I and III of the Complaint to the extent they concern the M4 mark, (ii) Count XI of the Complaint in its entirety (which concerns only the M4 mark) and (iii) Count I of the Counterclaim, which seeks cancellation of Colt's registration of the M4 mark, Registration No. 2,734,001, on the basis that the mark is generic. Beyond this, I recommend that the court grant summary judgment *sua sponte* on the basis of the genericness of the M4 mark with respect to (i) that portion of Count VII of the Complaint alleging false advertising predicated on Bushmaster's use of the M4 mark (contained in paragraph 104 of the Complaint) and (ii) Count IX of the Complaint (containing state-law claims of trademark infringement and unfair competition) to the extent it implicates the M4 mark.[114]

Paragraph 104 of the Complaint, which sets forth one of four types of alleged false advertising in which Colt claims Bushmaster has engaged (in violation of the Lanham Act, 15 U.S.C. § 1125(a)), provides:

> Bushmaster's unauthorized use of the M4® name and other Colt registered and common law marks in connection with the advertising, marketing, distribution, and sale of its goods falsely advertises that these products are connected with, sponsored by, affiliated with, or related to Colt, or falsely advertises that the M4® mark is a generic name for products, rather than a source identifier.

Complaint ¶ 104. The gravamen of this claim, as it pertains to the mark M4, is that Bushmaster wrongfully uses the mark in a generic manner and/or in such a manner as to mislead the public into

---

[114] Bushmaster arguably does move for summary judgment as to Count IX on the basis of all of its Lanham Act arguments (which include its genericness point). *See* Defendant's S/J Motion at 18 n.8; Plaintiff's S/J Opposition at 26 n.14. However, inasmuch as the matter is not free from doubt, I assume *arguendo* that it moves for summary judgment as to that count solely on the basis of its (*continued on next page*)

believing that Bushmaster's products are in some fashion connected with those of Colt.  Clearly, this claim is not sustainable with respect to the mark M4 in the face of my determination that, on the cognizable evidence, no reasonable trier of fact could conclude the mark is functioning as a source-identifier (versus simply a generic descriptor).  *See, e.g., Miller*, 655 F.2d at 7 ("Under no circumstances is a generic term susceptible of de jure protection under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)[.]") (footnote omitted).

In the same vein, Colt's state-law claims of trademark infringement and unfair competition decry, in relevant part, Bushmaster's alleged unauthorized use of Colt's M4 mark, which Colt contends is likely to cause confusion or mistake or deceive consumers as to the affiliation, connection or association between Colt and Bushmaster and/or their respective goods.  *See* Complaint ¶¶ 123-24.

Again, as a matter of law, this plaint cannot withstand a finding that the mark M4 is generic. *See, e.g.,* 10 M.R.S.A. § 1522(1)(E) (mark not registrable if merely descriptive of goods or services of applicant unless, *inter alia*, it has become distinctive of those goods or services); *MicroStrategy Inc. v. Motorola, Inc.,* 245 F.3d 335, 341 (4th Cir. 2001) ("If a purported mark fails to identify its source, it is not protectable – under state or federal law."); *Miller*, 655 F.2d at 7-8; *Rosso & Mastracco, Inc. v. Giant Food Shopping Ctr. of Va., Inc.*, 104 S.E.2d 776, 780 (Va.1958) ("The doctrine of secondary meaning as an element of unfair competition embraces a great area of the law, and has been discussed and considered in many cases.  The definition and elements of secondary meaning may be briefly stated as follows: Words and symbols used in connection with one's goods, services, or business, or physical attributes of goods, not capable of being appropriated as a technical trade mark, are deemed to have acquired a secondary meaning when they have become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with

---

likelihood-of-confusion argument.

the goods or services themselves.") (citation and internal quotation marks omitted); *Sebago Lake Camps, Inc. v. Simpson*, 434 A.3d 519, 521 (Me. 1981) ("Under common law, names consisting only of geographic or descriptive words were not normally entitled to protection. A name, though, could warrant protection if it acquired a secondary meaning so that the consuming public associated the name with a particular business or service. Courts will not presume the acquisition of secondary meaning; rather, it is an element that a plaintiff must prove.") (citations omitted).[115]

### B.  Likelihood of Confusion: All Terms

I move to Bushmaster's fourth point – the asserted lack of any triable issue as to likelihood of confusion among relevant consumers – which it contends is dispositive, as to all of the Terms, of Colt's Lanham Act claims of trademark infringement and false designation of origin as well as its parallel common-law claims of trademark infringement and unfair competition. *See* Defendant's S/J Motion at 18-29 & n.8; *see also, e.g., John G. Danielson, Inc. v. Winchester-Conant Props., Inc.,* 322 F.3d 26, 45 (1st Cir. 2003) (Lanham Act claim of false designation of origin is "close cousin" of trademark-infringement claim, focusing on likelihood of conduct to cause confusion or mistake or to deceive); *International Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir. 1996) ("[L]ikelihood of confusion often is the dispositive inquiry in a Lanham Act case.").

Colt does not dispute that the likelihood-of-confusion inquiry is dispositive of the foregoing claims; rather, it joins issue on the merits of the underlying point. *See* Plaintiff's S/J Opposition at 26 n.14.  Notably, it does so only with respect to its M4 mark, *see id.* at 26-33, although the relevant counts of its complaint, as well as Bushmaster's motion for summary judgment on the basis of its

---

[115] In Count IX of its Complaint, which was filed in the United States District Court for the Eastern District of Virginia, Colt invoked the common law of Virginia. *See* Complaint ¶ 122.  Arguably, the law of Maine should be applied.  However, the parties do not brief the issue of choice of law, and there is in any event no necessity to decide it inasmuch as the outcome is the same under the law of (*continued on next page*)

fourth point, address usage of marks other than M4, *see* Complaint ¶¶ 54, 83, 124; Defendant's S/J Motion at 18-29.  I consider this a concession that there is no triable issue as to likelihood of confusion with respect to any of the Terms other than M4 (namely, M16, CAR, MATCH TARGET, AR-15, COLT AR-15,  COLT AR-15 and design, and COMMANDO).  *See, e.g., Grenier v. Cyanamid Plastics, Inc*., 70 F.3d 667, 678 (1st Cir. 1995) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") (citations and internal quotation marks omitted).  However, in an abundance of caution, I nonetheless reach the question whether there is a triable issue with respect to any of those Terms.  Not surprisingly, I reach the same result on the merits: There is none.  With respect to the mark M4, as discussed above, my determination that there is no triable issue whether it is generic obviates the need to consider whether there is a triable issue of likelihood of confusion.  Hence, I confine my discussion to the seven remaining Terms.

To establish likelihood of confusion, a mark holder must show "that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care."  *Winship Green*, 103 F.3d at 201.  "The most common and widely recognized type of confusion that creates infringement is purchaser confusion of source which occurs at the time of purchase: point of sale confusion."  McCarthy § 23:5. "Confusion about source exists when a buyer is likely to purchase one product in the belief she was buying another and is thus potentially prevented from obtaining the product she actually wants."  *Star Fin. Servs., Inc. v. Aastar Mortgage Corp*., 89 F.3d 5, 9 (1st Cir. 1996).  However, as Colt suggests, *see* Plaintiff's S/J Opposition at 32 n.19, "[s]ource confusion is not the boundary, for actionable confusion includes confusion as to affiliation, connection or sponsorship[,]" McCarthy § 23:5 (footnote omitted).

---

either state.

The First Circuit "require[s] evidence of a 'substantial' likelihood of confusion – not a mere possibility – and typically refer[s] to eight factors in making the assessment[.]" *Star*, 89 F.3d at 10. These eight factors, three of which (the third through fifth) generally are considered together, are:

> (1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

*Winship Green*, 103 F.3d at 201, 204. "No one listed factor is determinative, and any other factor that has a tendency to influence the impression conveyed to prospective purchasers by the allegedly infringing conduct may be weighed by the judge or jury in gauging the likelihood of confusion." *Id.* at 201. "The eight-factor confusion test is not applied to assess confusion in the abstract; it is focused on the likelihood that commercially relevant persons or entities will be confused." *CMM Cable*, 888 F. Supp. at 200. "Actual and potential customers of the trademark owner are the most obvious 'relevant persons,' but other persons might be relevant in a given case." *Id.*

Applying these factors to the case at hand, I conclude as follows:

1.   <u>Similarity of Marks</u>.  As a threshold matter I note that Colt, which bears the burden of proving likelihood of confusion, adduces no evidence that Bushmaster ever used the terms CAR or MATCH TARGET.  Further, Bushmaster asserts – and Colt does not successfully controvert – that it (i) ceased using the term COMMANDO in its advertising in 1999 and (ii) has never used the marks COLT AR-15, or COLT AR-15 and design, in connection with the sale or advertising of its products. *See* Defendant's SMF ¶¶ 24-25; Plaintiff's Opposing SMF ¶¶ 24-25.  Thus, the Bushmaster marks in issue are COMMANDO (used through 1999), AR-15 and M16.  At face value, these marks are identical to their Colt counterparts, and the AR-15 mark is, in addition, similar to the COLT AR-15, and COLT AR-15 and design, marks.  Nonetheless, as Bushmaster points out, the similarity of marks is

not assessed in a vacuum. *See* Defendant's S/J Motion at 20-21; *see also, e.g., Winship Green*, 103 F.3d at 204 ("[S]imilar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos or other source-identifying designations of the manufacturer."); *Butcher Co. v. Bouthot*, 124 F.Supp.2d 750, 756 (D. Me.), *recon. denied*, 2001 WL 263313 (D. Me. 2001) ("The clearly displayed name of the manufacturer considerably reduces the likelihood that otherwise similar marks will be confused.").

It is uncontroverted that Bushmaster (i) never has marked any of its products with any of the Terms, (ii) stamps each firearm with the name B.F.I. or Bushmaster Firearms, Inc., the location where the firearm was manufactured, the distinctive Bushmaster snake logo and the model designation "Carbon 15," "XM15 E2S," "Bushmaster .308" or "M17S," (iii) prominently displays the Bushmaster name on the covers of its brochures and catalogues, (iv) precedes almost every model of firearms advertised in its brochures with the name "Bushmaster," (v) displays the Bushmaster name and logo on its web site and (vi) informs customers calling its 800 number that they have reached Bushmaster Firearms. *See* Defendant's SMF ¶¶ 15-16, 29-32; Plaintiff's Opposing SMF ¶¶ 15-16, 29-32. [**REDACTED**]. *See id.* ¶ 18. These efforts tend to differentiate the marks as used by Bushmaster from those used by Colt, weighing against a finding of likelihood of confusion.

2. <u>Similarity of Goods</u>. As Bushmaster concedes, both parties sell firearms and firearms parts. *See* Defendant's S/J Motion at 21. While, as Bushmaster notes, there are differences in the manner in which the products are configured, *see id.* at 22, the goods are similar, and this weighs in favor of a finding of likelihood of confusion.

3. <u>Channels of Trade; Juxtaposition of Advertising; Prospective Purchasers</u>. With respect to prospective purchasers, "the requisite inquiry is not limited merely to determining whether the class of prospective purchasers is the same or different. Instead, a court called upon to assay likelihood of

confusion must ponder the sophistication of the class, thereby taking account of the context in which the alleged infringer uses the mark." *Winship Green*, 103 F.3d at 204; *see also, e.g., Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1206 (1st Cir. 1983) ("[T]here is always less likelihood of confusion where goods are expensive and purchased after careful consideration. . . . The decision to buy a machine worth thousands of dollars is obviously not done on an impulse, and involves a careful consideration of the reliability and dependability of the manufacturer and seller of the product."); *Best Flavors, Inc. v. Mystic River Brewing Co.*, 886 F. Supp. 908, 916 (D. Me. 1995) (observing that the kind of "sophisticated purchaser" that courts have in mind when analyzing likelihood of confusion is one with "experience in purchasing a product and who care[s] about [its] purchase decisions; typically, 'high ticket' items are involved.")

Bushmaster acknowledges that both Colt and Bushmaster sell their products to civilians, federal and state governments, law-enforcement agencies and foreign governments. *See* Defendant's S/J Motion at 23. Both parties market their products by appearing at trade shows and via retail outlets in which products often are sold in the same stores and lined up on the same shelves. *See* Plaintiff's Additional SMF ¶ 122; Defendant's Reply SMF ¶ 122. Bushmaster also sells its products via its 800 number, web site and catalogues. *See id.* ¶ 50. However, while Bushmaster sells the majority of its products to civilians, with commercial sales comprising approximately sixty percent of all sales, the majority of Colt's sales are to the military through the Rock Island Arsenal. *See* Defendant's SMF ¶¶ 33-34; Plaintiff's Opposing SMF ¶¶ 33-34. With regard to sales to the military of Colt's M4 carbine, it is difficult to see how the military possibly could be confused as to source, sponsorship or affiliation: Colt has a sole-source contract with the U.S. government. As concerns all other purchasers, Bushmaster musters substantial evidence, which Colt does not successfully controvert, tending to underscore (i) the sophistication of all classes of purchasers to whom both parties sell, (ii)

the relative costliness of the product and (iii) the sophistication of the sales process itself (entailing, with respect to civilians, the filling out of forms listing, among other things, the firearm's manufacturer, and with respect to law-enforcement customers and domestic and foreign governmental agencies, typically evaluation and testing of firearms prior to purchase and/or a competitive-bidding process). *See id.* ¶¶ 19, 22, 35-36, 38, 40-43.

Consideration of these factors strongly weighs against a finding of likelihood of confusion.

4. <u>Actual Confusion</u>. The First Circuit has noted that "[w]hile a showing of actual confusion is not required to establish infringement, an absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists." *Aktiebolaget Electrolux v. Armtron Int'l, Inc.*, 999 F.2d 1, 4 (1st Cir. 1993). Bushmaster has been selling AR-15/M16/M4-type firearms in direct competition with Colt for more than twenty-five years. *See* Defendant's SMF ¶ 12; Plaintiff's Opposing SMF ¶ 12. Bushmaster adduces affirmative evidence, which Colt does not successfully controvert, [**REDACTED**]. *See id.* ¶¶ 21, 23. Colt, for its part, offers no cognizable evidence of actual confusion with respect to any of the Terms except the M4 mark. This weighs heavily against a finding of likelihood of confusion with respect to the terms AR-15, M16 and COMMANDO.

5. <u>Defendant's Intent</u>. A defendant's intent in adopting an allegedly infringing mark may be probative of likelihood of confusion, *see Star*, 89 F.3d at 11; however, the First Circuit has suggested that this factor should not be given great weight because, "[s]trictly, intent, or lack thereof, does not affect the eyes of the viewer." *I.P. Lund*, 163 F.3d at 44 (citation and internal quotation marks omitted). Bushmaster avows that its intent in using the marks in question is simply to identify the type of firearms being sold; Colt points to its evidence that (i) it received assurances over the years that Bushmaster would honor its trademarks, (ii) it saw some attempt by Bushmaster to

[**REDACTED**], but (iii) "the violations" then began again.  *Compare* Defendant's S/J Motion at 28 *with* Plaintiff's S/J Opposition at 32.  I sustained Bushmaster's objections to the first and third of Colt's cited statements.  Thus, this factor tilts in Bushmaster's favor.

6.     <u>Strength of Marks</u>.  "To assess the strength of a mark, one considers its distinctiveness or renown, the length of time it has been used, whether similar marks are in use, and the plaintiff's actions in promoting its mark."  *CMM Cable*, 888 F. Supp. at 201.  Bushmaster posits that the Terms are weak marks because they call to mind particular types, rather than sources of, firearms.  *See* Defendant's S/J Motion at 28.  Indeed, Bushmaster adduces evidence that (i) it has been selling AR-15/M16/M4-type firearms and firearms parts in direct competition with Colt for more than twenty-five years, (ii) although Colt protested Bushmaster's use of the term M16 in 1984, Bushmaster continued to use the term in its advertising, and Colt did not take any legal action to prevent Bushmaster from using the term M16 until the filing of the instant suit in 2004, (iii) the term M16 is not a registered trademark in the United States, (iv) the term AR-15 has been in use since the 1950s, and (v) because the M16-type rifle and the M4-type carbine both derive from the original AR-15 developed by Armalite, firearms purchasers often use the term AR-15 to refer to semiautomatic versions of the M16-type rifle or M4-type carbine that may be purchased by civilians.  *See* Defendant's SMF ¶¶ 11-12, 66-68, 80-81; Plaintiff's Opposing SMF ¶¶ 11-12, 66-68, 80-81.  Colt points to no evidence concerning the strength of marks other than M4.  *See* Plaintiff's S/J Opposition at 32.  Thus, the factor cuts against a finding of likelihood of confusion with respect to the remaining Terms.

In sum, in the face of Bushmaster's strong showing, Colt (which bears the burden of proving likelihood of confusion) does not succeed in raising a triable issue with respect to the seven Terms other than the M4 mark.  Given that  the majority of the eight factors counsel against a finding of likelihood of confusion  –  most notably, (i) the manner in which the marks are presented, (ii) the

sophistication of purchasers and the purchasing process and (iii) lack of evidence of actual confusion – no reasonable fact-finder could find in Colt's favor with respect to those seven Terms. Bushmaster accordingly is entitled to summary judgment with respect to Count I, III and IX of the Complaint as to all of the Terms apart from the mark M4.[116]

### C. M4 Trade Dress

I turn next to Bushmaster's fifth point, pursuant to which it seeks summary judgment with respect to Colt's M4-related trade-dress claim on the bases that Colt cannot prove that (i) the M4 product design is primarily non-functional, (ii) the design has acquired secondary meaning, or (iii) there is a likelihood of confusion. *See* Defendant's S/J Motion at 30.

As Bushmaster notes, *see id.* at 29, "trade dress" encompasses "the design and appearance of [a] product together with the elements making up the overall image that serves to identify the product presented to the consumer[,]" *I.P. Lund*, 163 F.3d at 35 (citation and internal quotation marks omitted). "The primary purpose of trade dress protection is to protect that which identifies a product's source." *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 38 (1st Cir. 2001). "Courts recognize trade dress claims based both on product packaging and on product design/configuration." *Id.* (citation and internal quotation marks omitted).

"In order to prevail on a claim for trade dress infringement under § 43(a) [of the Lanham Act], a plaintiff must prove three elements: (1) that the trade dress of the two products is confusingly similar; (2) that the features of the trade dress are primarily non-functional; and (3) that the trade dress is inherently distinctive or has acquired secondary meaning." *Epic Metals Corp. v. Souliere*, 99 F.3d 1034, 1038 (11th Cir. 1996). "[A]s all three elements are necessary for a finding of trade dress

---

[116] I express no opinion whether Bushmaster's bid for summary judgment as to the mark M4 on the ground of lack of a triable showing of likelihood of confusion has merit. As explained above, I need not reach this issue inasmuch as my finding regarding genericness is dispositive of Colt's claims regarding the mark M4.

infringement, any one could be characterized as threshold." *Id*. at 1039.[117] Product-design trade dress

can never be "inherently" distinctive; hence, in such cases the proponent must always make a showing

of the acquisition of secondary meaning. *See, e.g., Wal-Mart*, 529 U.S. at 214.

I am satisfied that Colt fails to generate sufficient evidence to raise a triable issue whether the

trade dress in question is primarily non-functional or its trade dress has acquired secondary meaning.

Either shortcoming is dispositive of its claim of trade-dress infringement.  I need not and do not reach

Bushmaster's argument regarding the remaining prong of trade-dress-infringement analysis (likelihood

of confusion).

"The functionality doctrine prevents trademark law, which seeks to promote competition by

protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to

control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co*., 514 U.S. 159, 164 (1995);

*see also, e.g., In re Morton-Norwich Prods., Inc*., 671 F.2d 1332, 1336 (C.C.P.A. 1982) ("This

requirement of 'nonfunctionality' . . . has as its genesis the judicial theory that there exists a

fundamental right to compete through imitation of a competitor's product, which right can only be

temporarily denied by the patent or copyright laws.").[118]

"[A] product feature is functional, and cannot serve as a trademark, if it is essential to the use

or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices,* 532 U.S.

at 32 (citation and internal quotation marks omitted).  Colt claims that the protectable trade-dress

---

[117] Colt's M4 trade dress is unregistered; hence there is no presumption of its validity.  *See, e.g., Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000) (discussing showing that plaintiff must make when trade dress is unregistered); *see also, e.g.*, 15 U.S.C. § 1125(a)(3).

[118] In describing Bushmaster's M4-type carbine as a "knockoff," *see* Plaintiff's S/J Opposition at 33, Colt intimates that Bushmaster wrongly copied the look and feel of its M4 carbine.  Nonetheless, as the Supreme Court has observed, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products.  In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.  As the Court has explained, copying is not always discouraged or disfavored by the laws which preserve our competitive economy."  *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001); *Tie Tech, Inc. v. Kinedyne Corp*., 296 F.3d 778, 785 (9th Cir. 2002) ("[T]here is nothing inherently wrong with Kinedyne's interest in copying the SAFECUT's configuration[.]").

feature of its M4 carbine is its overall shape, including its corrugated handguard and hand grip, its distinct sights and handle, its adjustable buttstock, its barrel shape and its coloration. *See* Defendant's SMF ¶ 50; Plaintiff's Opposing SMF ¶ 50. [**REDACTED**]. *See id.* ¶ 51. Bushmaster adduces detailed evidence, either admitted or not effectively controverted, that all of these aspects of the M4 carbine serve a useful purpose.[119] *See id.* ¶¶ 52-56, 89. As against this showing, Colt offered only the conclusory statement (to which I sustained Bushmaster's objection) that its M4 carbine has a distinctive look that is not totally determined by functional aspects. *See* Plaintiff's Additional SMF ¶ 39; Defendant's Reply SMF ¶ 39.

Bushmaster posits that Colt's trade dress is similar to that in issue in *Leatherman Tool Group, Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009 (9th Cir. 1999), in which the Ninth Circuit rejected the plaintiff's claim of trade-dress protection for the overall appearance of a multi-function pocket tool. *See* Defendant's S/J Motion at 34-35; *Leatherman*, 199 F.3d at 1010, 1014. As in the case of Colt's M4 trade dress, the trade dress for which the *Leatherman* plaintiff claimed protection included the "combination of multiple features, including: the tool size; the shape of the handles; the shape of the gripping jaws . . .; the brushed stainless steel finish on the handles; the selection, arrangement, and shape of all of the various tool blades[.]" *Leatherman*, 199 F.3d at 1011. The court concluded that the whole was nothing more than the assemblage of functional parts: "[W]here the whole is nothing other than the assemblage of functional parts, and where even the arrangement and combination of the

---

[119] Bushmaster also offers evidence that the following patents were assigned to Colt: a 1967 patent disclosing an adjustable buttstock assembly similar to that found on Colt's M4 carbine, a 1966 patent disclosing an M16-style "forward assist," which is found on Colt's M4 carbine, and a 1985 patent disclosing a cylindrical rifle handguard assembly similar in outward appearance to the handguard assembly found on Colt's M4 carbine. *See* Defendant's SMF ¶¶ 57-60; Plaintiff's Opposing SMF ¶¶ 57-60. As Bushmaster correctly observes, *see* Defendant's S/J Motion at 33, the existence of several utility patents covering aspects of the claimed trade dress weighs heavily in favor of a finding that those claimed aspects are functional, *see, e.g., TrafFix Devices*, 532 U.S. at 29-30 ("A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection.").

parts is designed to result in superior performance, it is semantic trickery to say that there is still some sort of 'overall appearance' which is non-functional." *Id*. at 1013.

In rejoinder, Colt offers up two arguments.  First, it notes that the First Circuit has held that the fact that a product contains some functional features does not preclude Lanham Act protection when a "particular arbitrary combination of functional features, the combination of which is not itself functional, properly enjoys protection."  Plaintiff's S/J Opposition at 34 (quoting *I. P. Lund*, 163 F.3d at 37).  It contends that, in this case, the overall design of its M4 carbine is arbitrary.  *See id*. at 34-35.  Next, it takes aim at the quality of Bushmaster's analysis, pointing out that Bushmaster overlooks a critical distinction between *de facto* and *de jure* functionality recognized in *Leatherman* and other cases.  *See* Plaintiff's S/J Opposition at 33-34.  *De facto* functionality "means that the design of a product has a function" while "[d]e jure functionality means that the product has a particular shape because it works better in this shape."  *Valu Eng'g, Inc. v. Rexnord Corp*., 278 F.3d 1268, 1274 (Fed. Cir. 2002).  While *de facto* functional features "may be entitled to trademark protection, . . . *de jure* functional features . . . are not."  *Id*.  Colt posits that Bushmaster's evidence at most raises a question whether the features of the Colt M4 are *de facto* functional, while Colt's own evidence that the component parts are not solely functional establishes that they are not *de jure* functional.  *See* Plaintiff's S/J Opposition at 34.

As previously noted, the evidence to which Colt refers is not cognizable.  In any event, as Bushmaster rightly points out, *see* Defendant's S/J Reply at 11-12, the burden is on Colt to prove the non-functionality of its overall product design (or individual components thereof), not on Bushmaster to prove its functionality.  What this means in the context of summary judgment is clear: "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary

judgment to the moving party." *In re Spigel*, 260 F.3d at 31 (citation and internal punctuation omitted).

Here, as in *Leatherman*, Bushmaster adduces evidence from which a reasonable trier of fact could conclude that the component parts of Colt's M4 trade dress are designed as they are because they work better in that shape. *See Leatherman*, 199 F.3d at 1013. Likewise, here, as in *Leatherman*, Colt – which bears the burden of proof – fails to point to any feature of, or marking on, its M4 carbine that is ornamental or intended to identify its source. *See id.*; *see also, e.g., TrafFix Devices*, 532 U.S. at 34 ("MDI in essence seeks protection for the dual-spring design alone. The asserted trade dress consists simply of the dual-spring design, four legs, a base, an upright, and a sign. MDI has pointed to nothing arbitrary about the components of its device or the way they are assembled. The Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity.").

Finally, even assuming *arguendo* that Colt generated sufficient evidence to stave off summary judgment with respect to the functionality of its trade dress, its claim would founder on the shoals of secondary-meaning analysis. As noted above, because product-design trade dress can never be "inherently" distinctive, its proponent must always make a showing of the acquisition of secondary meaning. *See, e.g., Wal-Mart*, 529 U.S. at 214. Colt thus must show that, "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982). Further, Colt must show that the public identifies the appearance of its M4 carbine either with Colt or with a single, albeit anonymous, source. *See, e.g., Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 315 n.7 (6th Cir. 2001) (noting, in context of trade-dress case: "While the law allows secondary meaning to be established by demonstrating that the public is aware that the product

61

comes from an *anonymous* source, there must be evidence indicating that it is a *single, anonymous*

source.") (emphasis in original).  The First Circuit has further noted:

> [P]roof of secondary meaning entails vigorous evidentiary requirements.  The only
> direct evidence probative of secondary meaning is consumer surveys and testimony by
> individual consumers.  Although survey evidence is not required, it is a valuable
> method of showing secondary meaning.
>
> \*\*\*
>
> Secondary meaning may also be proven through circumstantial evidence, specifically
> the length and manner of the use of the trade dress, the nature and extent of advertising
> and promotion of the trade dress, and the efforts made to promote a conscious
> connection by the public between the trade dress and the product's source.

*Yankee Candle*, 259 F.3d at 43 (citations, internal quotation marks and footnotes omitted).

As Bushmaster points out, *see* Defendant's S/J Motion at 37-38, Colt admits that

[**REDACTED**], *see* Defendant's SMF ¶¶ 64-65; Plaintiff's Opposing SMF ¶¶ 64-65. [**REDACTED**].

*See id.* ¶ 65.  Colt posits that it adduces sufficient evidence to stave off summary judgment inasmuch

as (i) customers seek M4-type carbines that have most of the features and look of a military M4, and

(ii) Colt is the sole supplier of the military M4 carbine.  *See* Plaintiff's S/J Opposition at 35.  As a

result, Colt posits, "customers necessarily associate the M4® carbine design with a single source."

*Id*.  Nonetheless, as Bushmaster rejoins, *see* Defendant's S/J Reply at 13 & n.17, this is too great a

stretch to qualify as a reasonable inference to be drawn in the nonmovant's favor.  Colt adduces no

evidence that relevant consumers are aware that the military's M4 carbines come from a sole source;

in fact, Colt's M4 Addendum with the U.S. military is highly confidential.  In the face of

[**REDACTED**], Colt's far-fetched inference fails to stave off summary judgment.  Bushmaster

accordingly is entitled to summary judgment with respect to Count V of the Complaint.

### D.  Laches

Inasmuch as Bushmaster's second, fourth and fifth points are dispositive of all but one of the six counts asserted against it, I confine my analysis of its sixth point (laches) to the remaining count, Count VII (alleging false advertising in violation of 15 U.S.C. § 1125(a)).  *See* Complaint ¶¶ 103-11.

As the United States Court of Appeals for the Seventh Circuit has noted:

> The equitable doctrine of laches is derived from the maxim that those who sleep on their rights, lose them.  Laches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it.  For laches to apply in a particular case, the party asserting the defense must demonstrate: (1) an unreasonable lack of diligence by the party against whom the defense is asserted and (2) prejudice arising therefrom.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).  Bushmaster posits that (i) Colt's delay in filing suit was unreasonable because Colt knew about Bushmaster's allegedly infringing activities more than eight years before commencing suit, and (ii) Bushmaster was prejudiced when it invested substantial resources in marketing and promoting its products while Colt not only was delaying bringing suit but also giving Bushmaster assurances it would not pursue infringement claims against it.  *See* Defendant's S/J Motion at 40-48.

In Count VII, Colt targets four types of allegedly false and misleading representations on Bushmaster's part: (i) its usage of the name M4 and other Colt registered and common-law marks, which "falsely advertises that [Bushmaster's] products are connected with, sponsored by, affiliated with, or related to Colt, or falsely advertises that the M4® mark is a generic name for products, rather than a source identifier"; (ii) its assertions that its products are made according to "military specifications" or "mil specs"; (iii) its assertions that its products are purchased by the U.S. military; and (iv) its use of Colt part numbers on its M4 and M16 lookalike products.  *See* Complaint ¶¶ 104-07.

I consider each of these four allegations in turn, concluding that Bushmaster has demonstrated its entitlement to summary judgment only with respect to the first, in part (albeit not on the ground of laches).

First Claim:  Colt's first claim of false advertising appears to encompass all of the Terms – namely, the common-law marks M16 and CAR and the federally registered marks M4, MATCH TARGET, AR-15, COLT AR-15, COLT AR-15 and design, and COMMANDO.  *See* Complaint ¶ 104.  As discussed above in the context of Bushmaster's genericness argument, the generic nature of the term M4 entitles Bushmaster to summary judgment as to this claim with respect to use of the term M4.  Further, Bushmaster's uncontroverted evidence that it has never used the terms COLT AR-15, or COLT AR-15 and design, in its advertising or in connection with the sale of its products entitles it to summary judgment as to this claim with respect to those marks.

The question remains, however, whether the doctrine of laches bars Colt from asserting its first claim of false advertising with respect to the remaining relevant Colt marks.  The Lanham Act contains no statute of limitations; thus, in judging whether a plaintiff has unreasonably delayed bringing suit for purposes of a laches defense, the court must "look to the most appropriate or the most analogous state statute of limitations[.]"  *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) (citations and internal quotation marks omitted).  Bushmaster suggests, and Colt does not disagree, that the most analogous state statute of limitations for purposes of the instant Lanham Act claims is the general six-year statute of limitations codified at 14 M.R.S.A. § 752.  *See* Defendant's S/J Motion at 40 n.13; Plaintiff's S/J Opposition at 36-40.  "[O]nce the analogous statute has run, a presumption of laches will apply and plaintiff must show why the laches defense ought not be applied in the case."  *Conopco*, 95 F.3d at 191.  Bushmaster adduces evidence, which Colt does not succeed in qualifying or

controverting, that as of 1996 – eight years prior to initiation of the instant suit – Colt was aware of Bushmaster's use of each of the Terms.  *See* Defendant's SMF ¶ 87; Plaintiff's Opposing SMF ¶ 87.

In response, Colt invokes the doctrine of "progressive encroachment" in support of the proposition that its diligence in pressing its rights should be measured not from the time it became aware of Bushmaster's mere usage of the Terms but, rather, from the time that likelihood of confusion presented a "significant danger" to its marks.  *See* Plaintiff's S/J Opposition at 37; *see also, e.g., ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002) ("The doctrine of progressive encroachment and the requirement that a plaintiff's delay must be unreasonable both allow the plaintiff some leeway in the timing of his suit. Although a plaintiff cannot simply sleep on his rights, he has no obligation to sue until the likelihood of confusion looms large and his right to protection has clearly ripened.") (citation and internal punctuation omitted).

Bushmaster joins issue, asserting that a 1999 letter it received from Colt's Carlton Chen demonstrates that as of that time Colt believed there was a likelihood of confusion with respect to the marks M4, M16, AR-15, MATCH TARGET and COMMANDO.  *See* Defendant's S/J Reply at 14. Bushmaster posits that "Colt's five-year delay before commencing suit was unreasonable as a matter of law."  *Id*.  Nonetheless, the analogous statute of limitations provides a six-year period within which to sue.  The filing of suit within that period – even at the tail-end of that period – is not unreasonable as a matter of law.  *See, e.g., Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) ("[I]f a § 43(a) claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit.").

Thus, Bushmaster fails to demonstrate its entitlement to summary judgment with respect to Colt's first claim of false advertising as concerns the marks M16, AR-15, MATCH TARGET and COMMANDO.  With respect to the mark CAR, Bushmaster fails to adduce any evidence tending to show when Colt became aware that its right to protection, if any, had ripened.  Thus, Bushmaster, which bears the burden of proving its affirmative defense of laches, *see, e.g., Hot Wax*, 191 F.3d at 820, falls short of demonstrating entitlement to summary judgment as to that mark.

Second Claim (that Bushmaster falsely advertised that its products were made to "military specifications" or "mil specs"):  In its memoranda of law, Bushmaster asserts that it adduces evidence that Colt was aware of this advertising as of 1994.  *See* Defendant's S/J Motion at 39, 41, 44 & n.14; Defendant's S/J Reply at 14.  However, the statements of material facts upon which Bushmaster relies do not specifically mention such advertising.  *See* Defendant's SMF ¶¶ 72, 85, 86. Inasmuch as the facts upon which Bushmaster relies are not set forth in a fashion cognizable pursuant to Local Rule 56, Bushmaster fails to demonstrate its entitlement to summary judgment with respect to Colt's second claim of false advertising.

Third Claim (that Bushmaster falsely advertised that its products were purchased by the U.S. military):  With respect to the third claim, Bushmaster's bid for summary judgment founders on the shoals of necessity to demonstrate prejudice.  *See, e.g., Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001) ("Unreasonable delay . . . is not enough: In addition, laches requires prejudice  . . . . The reason for this is clear and, in some sense, definitional: The very purpose of laches as an equitable doctrine – and the reason that it differs from a statute of limitations – is that the claim is barred because the plaintiff's delay occasioned the defendant's prejudice.") (citations and internal quotation marks omitted).

Bushmaster argues, as an initial matter, that it has been prejudiced as a result of its "substantial" investment of resources in marketing and promoting its products and its development of widespread brand recognition.  *See* Defendant's S/J Motion at 46; Defendant's S/J Reply at 15. However, as Colt observes, *see* Plaintiff's S/J Opposition at 38-39, Bushmaster points to no concrete evidence to buttress these assertions.  Bushmaster alternatively argues that it was prejudiced as a result of its reliance on (i) a 1991 assurance by Colt Vice-President and General Counsel Patrick M. Squire that Colt recognized Bushmaster's right to manufacture and sell AR-15/M16/M4-type firearms and would not be pursuing trademark-infringement claims against Bushmaster and (ii) a 1999 assurance by Colt Chief Executive Officer Steven Sliwa that Bushmaster did not have to worry about receiving any more letters from Colt complaining about Bushmaster's alleged use of Colt's trademarks.  *See* Defendant's S/J Motion at 46-47.  However, Colt introduces evidence successfully controverting both of these accounts.  *See* Defendant's SMF ¶¶ 71, 78-79; Plaintiff's Opposing SMF ¶¶ 71, 78-79.

Thus, Bushmaster fails to demonstrate its entitlement to summary judgment with respect to Colt's third claim of false advertising.

Fourth Claim (that Bushmaster used Colt's part numbers on its products):  Bushmaster introduces not a shred of evidence regarding its use (if any) of Colt's part numbers on its products or Colt's awareness of such conduct.  Hence, it fails to demonstrate any entitlement to summary judgment on the basis of laches with respect to this particular claim.

For all of the foregoing reasons, Bushmaster's bid for summary judgment as to Count VII should be denied, except to the extent concerning the first claim of false advertising with respect to the marks M4,  COLT AR-15, and COLT AR-15 and design.

## E.  Recovery of Damages for Lanham Act Claims

In its seventh point, Bushmaster contends that even were the court to find a material factual dispute precluding summary judgment with respect to any of Colt's Lanham Act claims, Colt cannot recover damages because it lacks any evidence of actual consumer confusion.  *See* Defendant's S/J Motion at 48-49.  I address this final point only with respect to Colt's false-advertising claims that I have recommended survive Bushmaster's motion for summary judgment.

As Bushmaster points out, to recover damages for false advertising pursuant to the Lanham Act, a plaintiff must prove both (i) actual harm to its business interests and (ii) actual confusion and deception arising from the false or misleading statements, unless the plaintiff can avail itself of a presumption that such confusion exists.  *See id*. at 48 n.15; *see also, e.g., Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave*., 284 F.3d 302, 313-14 & n.12 (1st Cir. 2002); *Clorox Co. P.R. v. Proctor & Gamble Commercial Co*., 228 F.3d 24, 33 (1st Cir. 2000).

Colt neither argues that it is entitled to avail itself of a presumption of consumer confusion nor adduces cognizable evidence of such confusion arising from any of the alleged false statements in question.  *See* Plaintiff's S/J Opposition at 40-41.[120]  Bushmaster accordingly is entitled to prevail with respect to its assertion that Colt should be precluded from recovering as to those portions of Count VII that I have recommended survive summary judgment.

## IV.  Conclusion

For the foregoing reasons I **GRANT** in part and **DENY** in part Bushmaster's motion to exclude certain testimony of expert LaPlante and recommend that Bushmaster's motion for summary judgment

---

[120] In paragraph 104 of its statement of additional facts, Colt asserted: "There is ample evidence of actual confusion by customers in Malaysia, Taiwan, Oman, Col[o]mbia, Chile, Brazil, United Arab Emirates, Kuwait, Greece, and the Philippines."  Plaintiff's Additional SMF ¶ 104.  However, I sustained Bushmaster's objection to the statement, which in any event is vague and may or may not apply to the specific alleged misrepresentations in issue.  With respect to the issue of actual harm to its business interests, Colt points to evidence that it has **[REDACTED]** in the Philippines and **[REDACTED]** in Dubai.  *See* Plaintiff's S/J Opposition at 41; (*continued on next page*)

be **GRANTED** as to (i) Counts I, III, V, IX and XI of Colt's complaint, (ii) Count I of Bushmaster's counterclaim (seeking cancellation of Colt's federal registration for the mark M4, Registration No. 2,734,001) and (iii) Count VII of Colt's complaint with respect only to its first claim of false advertising as to the marks M4, COLT AR-15, and COLT AR-15 and design, and otherwise **DENIED**.[121]  If this recommended decision is adopted, remaining for trial will be Count VII, except with respect to the first claim of false advertising as to the marks M4, COLT AR-15, and COLT AR-15 and design.  As to those portions of Count VII that I have recommended survive summary judgment, I further recommend that the court **GRANT** Bushmaster's motion to bar the recovery of damages.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 20th day of September, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

Plaintiff's Additional SMF ¶¶ 107-08.  I sustained Bushmaster's objections to these statements.

[121]  As noted above, I recommend that the court enter summary judgment *sua sponte* on the basis of the genericness of the M4 mark with respect to (i) that portion of Count VII of the Complaint alleging false advertising predicated on Bushmaster's use of the M4 mark (contained in paragraph 104 of the Complaint), and (ii) Count IX of the Complaint (containing state-law claims of trademark infringement and unfair competition) to the extent it implicates the M4 mark.  "It is apodictic that trial courts have the power to grant summary judgment sua sponte" provided "(1) the case [is] sufficiently advanced in terms of pretrial discovery for the summary judgment target to know what evidence likely can be mustered, and (2) the target [has] received appropriate notice."  *Rogan v. Menino*, 175 F.3d 75, 79 (1st Cir. 1999).  Here, as in *Rogan*, the first condition precedent is satisfied inasmuch as discovery is complete.  *See id.*  The fact that this is a recommended decision satisfies the second condition precedent inasmuch as the parties are afforded an opportunity to seek *de novo* review of these (and other) recommendations by an Article III judge.